**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Crim. No.: 1:06-CR-00288-RJL** |
| ) | |
| **SCOTT THOMPSON** ) | |
| ) | |
| **Defendant** ) | |
| _____ ) | |

**DEFENDANT SCOTT THOMPSON'S MOTION FOR AN ORDER**
**DIRECTING THE CLERK TO ISSUE CERTAIN SUBPOENAS**
**_DUCES TECUM_ RETURNABLE BEFORE TRIAL**

Defendant Scott Thompson, through counsel, respectfully moves this Court, pursuant to

Federal Rules of Criminal Procedure 16(a)(1)(E)(i) and 17(c), for an order directing the clerk to

issue three subpoenas _duces tecum_ to produce responsive documents at a date certain before trial

(_see_ Exhibits A through C). Defendant has conferred with the Government in a good faith effort

to gain the Government's consent, and the Government has reserved its position. In support of

this motion, Defendant states the following and provides the Court with the Statement of Points

and Authorities accompanying this motion. A proposed order also is attached.

The indictment in this matter charges Mr. Thompson with a single count of conspiracy, in

violation of 18 U.S.C. § 341, to manipulate gas prices and knowingly deliver and cause to be

delivered false and misleading and knowingly inaccurate reports (in violation of 7 U.S.C.

§ 13(a)(2)) and to commit wire fraud (in violation of 18 U.S.C. § 1343). _See_ Indictment, ¶ 4.

The indictment alleges that, during the relevant time frame, industry publications, including

_Inside FERC's Gas Market Report_ ("_IFERC_") and _Gas Daily,_ published "natural gas prices" or

"index" natural gas prices at different locations in the country and that _IFERC_ computed indices

of prices based on trading data submitted by energy companies. Indictment, ¶ 1(c)-(d) . The

indictment further alleges that contracts for financial trades of natural gas were "often . . . tied to index prices, including those published by *IFERC*." Indictment, ¶ 1(e). Mr. Thompson is alleged to have participated in a conspiracy to provide false information to *IFERC* and *Gas Daily* on behalf of Williams "in order to influence or attempt to influence the price of natural gas. . . ." Indictment, ¶ 5.

Defendant has sought discovery from the Government to enable him to evaluate the content and context of the price reports allegedly submitted by Mr. Thompson, the credibility of witnesses against him, and the impact, if any, of any reports he made to index publications. Defendant has reviewed the discovery produced by the Government to date and has cause to believe that the documents requested in the subpoenas are not available from any other source, including the Government, through the exercise of due diligence.

This motion seeks the issuance of subpoenas to:

1.    The McGraw-Hill Companies ("McGraw-Hill") (*see* Exhibit A);

2.    Williams Power Company, Inc., formerly Williams Energy Marketing & Trading Co., and/or its parent, The Williams Companies, Inc. ("Williams") (*see* Exhibit B); and

3.    The Federal Energy Regulatory Commission ("FERC") (*see* Exhibit C).

The Williams subpoena satisfies the standards of both Criminal Rule 16(a)(1)(E)(i) and Rule 17(c). The Court should apply the "materiality" standard of Rule 16(a)(1)(E)(i) to the Williams subpoena because Defendant requests documents that the Government may at any time demand from Williams pursuant to a "Deferred Prosecution Agreement" ("DPA") between Williams and the Government. *See, e.g.,* Exh. D, DPA ¶¶ 2, 5, 6(a), 6(b), 6(f). Pursuant to the terms of the DPA, the documents are thus "within the government's possession, custody, and

control." Fed. R. Crim. P. 16(a)(1)(E); *United States v. Stein, et al.*, No. 1:05-cr-00888, 2007 WL 1258926 , at * 4 (S.D.N.Y. May 1, 2007) (applying Rule 16 materiality standard to defendant's subpoena for documents from KPMG available to the Government by virtue of Deferred Prosecution Agreement).  As such, these documents should be produced because they are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i); *see United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993) (elaborating upon materiality standard).

The Williams, McGraw-Hill and FERC subpoenas are all also proper pursuant to Rule 17(c) and the law interpreting that rule.  The subpoenas seek "evidentiary and relevant" documents that Defendant cannot otherwise obtain "reasonably in advance of trial by exercise of due diligence . . . ." *United States v. Nixon,* 418 U.S. 683, 699 (1974) (outlining characteristics of a proper Rule 17(c) subpoena calling for production before trial).  Defendant's request is made in good faith and the subpoenas are "not intended as a general 'fishing expedition.'" *Id.* at 700. Defendant "cannot properly prepare for trial without such production and inspection in advance of trial and . . . failure to obtain such inspection may tend unreasonably to delay the trial." *Id.* at 699.  Additionally, production pursuant to these subpoenas would not be "unreasonable or oppressive." *Id.* at 698.

Finally, Defendant's access to the documents requested in these subpoenas before trial is essential to his ability to prepare his defense and to secure his fair trial rights.  In particular, the documents will be material to any expert opinions he may wish to offer and to his ability to confront witnesses against him. *See Brady v. Maryland,* 373 U.S. 83 (1963); *Giglio v. United States,* 405 U.S. 150 (1972).

WHEREFORE, Defendant respectfully requests that his motion be granted and the Clerk be directed to issue subpoenas *duces tecum* based upon the attached schedules of document requests.

Respectfully submitted,

  /s/ Philip T. Inglima
Philip T. Inglima (D.C. Bar No. 420119)
Adrian D. Mebane (D.C. Bar No. 467885)
Ann M. Mason (D.C. Bar No. 491902)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116

Dated:  May 4, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Crim. No.:  1:06-CR-00288-RJL** |
| | ) | |
| **SCOTT THOMPSON** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SCOTT THOMPSON'S MOTION FOR AN ORDER DIRECTING THE CLERK TO ISSUE CERTAIN SUBPOENAS *DUCES TECUM* RETURNABLE BEFORE TRIAL**

**I.      Background**

The McGraw-Hill Companies, and/or Platts, a division of the McGraw-Hill Companies ("McGraw-Hill"), own the two "index publications" to which Mr. Thompson is alleged to have made false reports in furtherance of the conspiracy to manipulate gas prices, *Inside FERC's Gas Market Report* ("*IFERC*") and *Gas Daily*.  Williams Power Company, Inc., formerly Williams Energy Marketing & Trading Co., and/or its parent, The Williams Companies, Inc. ("Williams"), is the company on behalf of which Mr. Thompson allegedly made false reports to these index publications, as did three witnesses who have pled guilty to related charges and who are now cooperating with the Government.  Williams also cooperated with the various government agencies' investigations of gas traders' submissions to index publications.  The Federal Energy Regulatory Commission, along with the Department of Justice and the Commodity Futures Trading Commission, conducted the investigation of gas traders' submissions to index publications that led to Mr. Thompson's indictment.  Williams also cooperated with FERC's investigation.

## II.    The Subpoenas Seek Specific, Relevant and Material Evidence Necessary to Secure Defendant's Fair Trial Rights

As detailed below, the subpoenas are directed to several specific categories of material, relevant and admissible evidence. All of the requested records are admissible pursuant to, among others, Rules 401 (relevance), 402 (relevant evidence generally admissible), 406 (habit or routine), 801(d) (prior statements), and 803(6) (records of regularly conducted activities) of the Federal Rules of Evidence. As described more fully below, Defendant requires the designated documents in order to prepare his defense to the charge alleged in the indictment and to secure his fair trial rights.

### A.    The McGraw-Hill Subpoena

Based on publicly available information regarding the manner in which McGraw-Hill gathered data and generated the natural gas price indices it published, and in light of discovery to date, Defendant has good cause to believe that material responsive to the subpoena and critical to Defendant's defense is available from McGraw-Hill, including but not limited to:

1.    Reports and communications made by Mr. Thompson and other Williams employees to *IFERC* and *Gas Daily, i.e.,* the raw material those publications allegedly employed to formulate their published index prices;

2.    Spreadsheets showing how *IFERC and Gas Daily* analyzed that and other raw material, and showing how the publications formulated the "index price;"

3.    Documents reflecting McGraw-Hill's policies and procedures regarding gathering data, analyzing data and formulating the indices.

*See* Exh. A: Williams Subpoena.

2

B.    **The Williams Subpoena**

Publicly available information regarding Williams' internal investigation, information regarding McGraw-Hill's practices in gathering data and publishing its indices, and discovery produced to date regarding, for example, Williams' employees' statements, give Defendant good cause to believe that Williams has in its possession responsive documents critical to his defense, such as:

1.    Reports and other communications made by Mr. Thompson and other Williams employees to *IFERC* or *Gas Daily*;

2.    Internal and external communications relating to those reports and communications;

3.    Documents reflecting Williams' policies relating to reporting to or communicating with indices such as *IFERC* or *Gas Daily*, and other policies relating to Mr. Thompson's and witnesses' duties and conduct;

4.    Documents reflecting the substance of statements made by Williams' employees relating to those reports and communications, as well as related findings;

5.    Documents reflecting witnesses' history of employment with Williams.

*See* Exh. B: McGraw-Hill Subpoena.

C.    **The FERC Subpoena**

Publicly available information gives Defendant good cause to believe that FERC has documents responsive to the subpoena and critical to his defense, including but not limited to documents reflecting reports and other communications made by Mr. Thompson and other Williams employees to *IFERC* or *Gas Daily*, and witness statements and analyses relating to the same.  *See* Exh. C: FERC Subpoena.

**D.    The Subpoenas Seek Material and Relevant Evidence and Early Return of the Subpoenas Will Promote Judicial Efficiency**

In short, without access to this information before trial, Defendant's ability to secure his fair trial rights will be prejudiced.  In addition, production of this evidence before trial will promote judicial economy by preventing the need for recesses in order for Defendant to make use of the evidence.

The evidence requested by the subpoenas is relevant to Mr. Thompson's intent and state of mind.  For example, it will provide the context within which he allegedly committed the acts alleged in the indictment.  In addition, the evidence would provide the material necessary for any related expert analysis he may wish to undertake, including but not limited to an analysis of what, if any, potential effect Mr. Thompson's alleged conduct may have had, or to analyze any expert reports the Government produces.  The evidence is also relevant to the credibility of witnesses against Defendant.

The evidence would enable the Defendant to substantially alter and counter the level and quality of proof leveled against him by, for example, aiding in witness preparation, or in corroborating or impeaching evidence offered against him.  In addition to meeting the standards for proper Rule 17(c) subpoenas, the subpoenas also satisfy the materiality standard of Rule 16(a)(1)(E)(i).

**III.**    <u>**Conclusion**</u>

For the foregoing reasons, and such others as may be set forth a hearing on this motion, Defendant Scott Thompson respectfully requests that the Court grant his motion and direct the clerk to issue subpoenas *duces tecum* consistent with the attached document schedules returnable by June 15, 2007.

Respectfully submitted,

  /s/ Philip T. Inglima
Philip T. Inglima (D.C. Bar No. 420119)
Adrian D. Mebane (D.C. Bar No. 467885)
Ann M. Mason (D.C. Bar No. 491902)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116

Dated:  May 4, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May 2007, a true copy of the foregoing Defendant

Scott Thompson's Motion For An Order Directing the Clerk to Issue Certain Subpoenas

*Duces Tecum* Returnable Before Trial, Statement of Points and Authorities in Support thereof,

and Exhibits thereto, together with a proposed Order, were sent via electronic mail, to:

> Robertson Park, Assistant Chief
> Amanda L. Riedel, Trial Attorney
> U.S. Department of Justice
> Criminal Division, Fraud Section
> 10th & Constitution Ave., NW
> Bond Building, 4th Floor
> Washington, DC 20530

  /s/ Adrian D. Mebane
Adrian D. Mebane

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )    **Crim. No.:  1:06-CR-00288-RJL** |
| | ) |
| **SCOTT THOMPSON** | ) |
| | ) |
| **Mr. Thompson.** | ) |
| | ) |

## ORDER

Upon consideration of Defendant Scott Thompson's Motion for an Order Directing the

Clerk to Issue Certain Subpoenas *Duces Tecum* Returnable Before Trial, the Government's

responsive filing thereto, and the entire record, it is by the Court, on this _____ day of

_____ of 2007

ORDERED that Mr. Thompson's motion is GRANTED, and it is further

ORDERED that the Clerk shall issue the subpoenas *duces tecum* calling for the

production of documents as detailed in Defendant's submitted schedules, to be produced no later

than June 15, 2007, by, respectively: The McGraw-Hill Companies; Williams Power Company,

Inc., formerly Williams Energy Marketing & Trading Co., and/or its parent, The Williams

Companies, Inc.; and the Federal Energy Regulatory Commission.


_____
HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

electronic copies to:

Philip T. Inglima, Esquire
Adrian D. Mebane, Esquire
Ann M. Mason, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004


Robertson Park, Assistant Chief
Amanda L. Riedel, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
10th & Constitution Ave., NW
Bond Building, 4th Floor
Washington, DC 20530

**Exhibit A**

AO 69 (Rev. 11/91) Subpoena in a Criminal Case

# United States District Court

FOR THE ——————————— DISTRICT OF ———— COLUMBIA

UNITED STATES OF AMERICA

### v.

SCOTT THOMPSON

## SUBPOENA IN A
## CRIMINAL CASE

**CASE NUMBER:**

CRIM. NO.: 1:06-CR-00288-RJL

**TO:** The McGraw-Hill Companies
Corporate Headquarters
1221 Ave. of the Americas
New York, NY  10020-1095

☐ **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
| United States Courthouse 333 Constitution Ave., NW Washington, DC  20001 | Courtroom 18 |
| | **DATE AND TIME** June 15, 2007  4p.m. |

☒ **YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):

See attached Schedule A.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| NANCY MAYER-WHITTINGTON (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

## RETURN OF SERVICE(1)

| | DATE | PLACE |
|---|---|---|
| **RECEIVED BY SERVER** | | |
| **SERVED** | DATE | PLACE |

**SERVED ON (PRINT NAME)**

| **SERVED BY (PRINT NAME)** | | **TITLE** |
|---|---|---|

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

### DECLARATION OF SERVER(2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                          *Date*                                    *Signature of Server*

                                                        _____
                                                                 *Address of Server*

**ADDITIONAL INFORMATION**

(1) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(2) "Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

## <u>SCHEDULE A TO: RULE 17(c) SUBPOENA TO THE MCGRAW-HILL COMPANIES</u>

**I.    DEFINITIONS AND INSTRUCTIONS**

1.    "MCGRAW-HILL" means the McGraw-Hill Companies and/or any division of the McGraw-Hill Companies or any other predecessor or successor company that, during any relevant time, published *Inside FERC's Gas Market Report* ("*IFERC*") or *Gas Daily*, including but not limited to Platts, a division of the McGraw-Hill Companies.

2.    "WILLIAMS" means Williams Power Company, Inc., formerly Williams Energy Marketing &Trading Co., and/or its parent, The Williams Companies, Inc., or any predecessor or successor, or the Board of Directors for any of the same ("Williams").

3.    "COMMUNICATION" means any disclosure, transfer or exchange of information between or among two or more persons or companies, including any formal or informal, oral, written or electronically transmitted communication.

4.    "DOCUMENT" or "DOCUMENTS" means the original or any identical copy and all non-identical copies (whether different from the original because of notes or underlining made to it, attachments, annotations, marks, highlighting or otherwise) of any written, printed, electronically generated or retained recorded material, graphic material or electronic data of writings of every kind and description that are fixed in any form. "DOCUMENTS" also includes recordings of telephone conversations if recordings responsive to the requests have been previously identified.

5.    "RELATE TO" or "RELATING TO" means constituting, considering, comprising, containing, concerning, referring to, discussing, regarding, describing, analyzing, reflecting, identifying, commenting, or stating in whole or in part.

6.    Whenever the word "ALL" appears, the word means "ANY AND ALL."

7.    Whenever the word "OR" appears, the word includes "AND" and means "AND/OR."

8.    In this subpoena, the singular includes the plural, and the plural includes the singular. The past tense includes the present tense, and the present tense includes the past tense. The masculine includes the feminine, and the feminine includes the masculine.

9.    "GAS" means natural gas.

10.    documents shall be produced in an order corresponding to each paragraph of this subpoena, or, in the alternative, they may be produced in the same order in which they are maintained in the ordinary course of business.

11.    If you refuse to produce any document herein requested under a claim of privilege, work product, or other reason for non-production, you are requested to submit, in lieu of each such document, a privilege log which:

    a.    identifies the privilege, work product, or other asserted reason for non-production;

    b.    describes the nature and general topic of the type of document;

    c.    identifies the person who prepared the documents and any persons to whom the document was sent or disclosed;

    d.    identifies any person who has seen or had possession of the document; and

    e.    specifies the dates on which the document was prepared, transmitted and received.

12.     This obligation shall be deemed continuing, and any document that you obtain or locate after the production pursuant thereto, which would have been produced had it been available or its existence known at that time, is to be supplied forthwith.

13.     No witness need appear on the date and time specified in the subpoena, but McGraw-Hill must identify a witness competent to identify and authenticate the documents or materials produced in response to this subpoena.

## II.    DOCUMENTS TO BE PRODUCED

1.      All documents reflecting or relating to any communication of information relating to gas prices or gas volumes transmitted to *Inside FERC's Gas Market Report* ("*IFERC*") or *Gas Daily* anytime between January 1, 1998 and October 31, 2002 and made by or on behalf of Williams, including but not limited to communications by:

      a.      Scott Thompson;

      b.      Darryl Russell Brown;

      c.      Thomas Jefferson Pool; and/or

      d.      Brion Scott McKenna.

2.      All documents analyzing, discussing, reflecting, or otherwise relating to gas prices or gas volumes communicated to *IFERC* or *Gas Daily* anytime between January 1, 1998 and October 31, 2002 and made by or on behalf of Williams, including but not limited to by the individuals listed in Request 1(a-d), including but not limited to:

      a.      Excel or other electronic databases compiled by *IFERC* or *Gas Daily* reflecting "bidweek" communications from traders of gas prices and volumes traded;

b.  spreadsheets created by *IFERC* or *Gas Daily* containing reported "bidweek" survey trade data reflecting the data used to calculate the monthly natural gas price indices;

c.  any other documents or communications reviewed and relied upon in calculating monthly natural gas price indices.

3.  All documents created or modified between January 1, 1998 and the date of this subpoena analyzing, discussing, reflecting, or otherwise relating to policies employed by *IFERC* or *Gas Daily* reporters and/or editorial staff in assessing or evaluating, for the purpose of determining what "index price" to publish, communications of gas prices or gas volumes from gas companies and gas traders, or the lack of such policy.

4.  All documents created or modified between January 1, 1998 and the date of this subpoena analyzing, discussing, reflecting, or otherwise relating to methodologies, formulae or any kinds of analyses that were or might have been employed by *IFERC* reporters and/or editorial staff in determining what "index price" to publish.

# Exhibit B

AO 89 (Rev. 11/91) Subpoena in a Criminal Case

# United States District Court

FOR THE _____ DISTRICT OF _____ COLUMBIA

UNITED STATES OF AMERICA

V.

SCOTT THOMPSON

## SUBPOENA IN A CRIMINAL CASE

CASE NUMBER:
CRIM. NO.: 1:06-CR-00288-RJL

**TO:** The Williams Companies
One Williams Center
Tulsa, OK  74172

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
| United States Courthouse<br>333 Constitution Ave., NW<br>Washington, DC  20001 | Courtroom 18 |
| | DATE AND TIME<br>June 15, 2007  4p.m. |

☒ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See attached Schedule A.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| NANCY MAYER-WHITTINGTON | |
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

**Exhibit B**
**1:06-CR-00288-RJL**

## RETURN OF SERVICE [1]

| | DATE | PLACE |
|---|---|---|
| **RECEIVED BY SERVER** | | |
| **SERVED** | DATE | PLACE |

**SERVED ON (PRINT NAME)**

| **SERVED BY (PRINT NAME)** | **TITLE** |
|---|---|

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER [2]

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
              *Date*

_____
*Signature of Server*

_____
*Address of Server*

**ADDITIONAL INFORMATION**

[1] As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

[2] "Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

## SCHEDULE A TO: RULE 17(c) SUBPOENA TO THE WILLIAMS COMPANIES, INC.

**I.    DEFINITIONS AND INSTRUCTIONS**

1.    "WILLIAMS" means Williams Power Company, Inc., formerly Williams Energy Marketing & Trading Co., and/or its parent, The Williams Companies, Inc. or any predecessor or successor, or the Board of Directors for any of the same ("Williams").

2.    "WILLIAMS" means Williams Power Company, Inc., formerly Williams Energy Marketing &Trading Co., and/or its parent, The Williams Companies, Inc, or any predecessor or successor, or the Board of Directors for any of the same ("Williams").

3.    "COMMUNICATION" means any disclosure, transfer or exchange of information between or among two or more persons or companies, including any formal or informal, oral, written or electronically transmitted communication.

4.    "DOCUMENT" or "DOCUMENTS" means the original or any identical copy and all non-identical copies (whether different from the original because of notes or underlining made to it, attachments, annotations, marks, highlighting or otherwise) of any written, printed, electronically generated or retained recorded material, graphic material or electronic data of writings of every kind and description that are fixed in any form. "DOCUMENTS" also includes recordings of telephone conversations if recordings responsive to the requests have been previously identified.

5.    "RELATE TO" or "RELATING TO" means constituting, considering, comprising, containing, concerning, referring to, discussing, regarding, describing, analyzing, reflecting, identifying, commenting, or stating in whole or in part.

6.    Whenever the word "ALL" appears, the word means "ANY AND ALL."

7.    Whenever the word "OR" appears, the word includes "AND" and means "AND/OR."

8.    In this subpoena, the singular includes the plural, and the plural includes the singular. The past tense includes the present tense, and the present tense includes the past tense. The masculine includes the feminine, and the feminine includes the masculine.

9.    "GAS" means natural gas.

10.    documents shall be produced in an order corresponding to each paragraph of this subpoena, or, in the alternative, they may be produced in the same order in which they are maintained in the ordinary course of business.

11.    This obligation shall be deemed continuing, and any document that you obtain or locate after the production pursuant thereto, which would have been produced had it been available or its existence known at that time, is to be supplied forthwith.

12.    No witness need appear on the date and time specified in the subpoena, but McGraw-Hill must identify a witness competent to identify and authenticate the Documents or materials produced in response to this subpoena.

## II.    DOCUMENTS TO BE PRODUCED

1.    All documents reflecting or relating to any communication of information relating to gas prices or gas volumes transmitted to *Inside FERC's Gas Market Report* ("*IFERC*") or *Gas Daily* anytime between January 1, 1998 and October 31, 2002 and made by or on behalf of Williams, including but not limited to communications by:

      a.    Scott Thompson;

      b.    Darryl Russell Brown;

      c.    Thomas Jefferson Pool; and/or

      d.    Brion Scott McKenna.

2.    All documents created or modified any time after January 1, 1998 that relate to any statement of Williams' policy or procedure regarding Williams' employees' communications

of gas price or volume information to *Inside FERC's Gas Market Report ("IFERC"), Gas Daily* or any other publication that publishes or has published gas "price indices."

3.    All documents or communications created or modified by any Williams employee or agent, including but not limited to counsel, that relate facts gathered or findings reached during, or as a consequence of either the Williams internal investigation described in an October 25, 2002 Williams press release entitled "Williams Discloses Natural Gas Trade Reporting Inaccuracies" and/or *Final Report on Price Manipulation in Western Markets: Fact Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* Docket No. PA02-2-000, at ES-1 (Fed. Energy Reg. Comm'n Mar. 2003),  or in response to a request or demand of information from the United States Department of Justice, the Federal Energy Regulatory Commission or the Commodity Futures Trading Commission and as a consequence of any formal or informal agreement to cooperate with those agencies' investigations relating to allegedly false and inaccurate gas price and volume data reports made to industry publications, including but not limited to employee statements; documents recording, summarizing or reporting the substance and/or details of witness interviews or statements; and/or documents recording, summarizing or reporting legal analyses, legal or management recommendations or conclusions.

4.    All documents created or modified before the return date of this subpoena provided by any Williams employee or agent to the Federal Energy Regulatory Commission or the Commodity Futures Trading Commission in connection with either of their investigations of gas traders' communications to industry publications of false or inaccurate price or volume data.

5.    All documents reflecting or relating to any Williams employee or agent communications with the United States Department of Justice, the Federal Energy Regulatory

Commission or the Commodity Futures Trading Commission, or any representative thereof, relating to Williams' employees' communications of gas price or volume data to *"IFERC," Gas Daily* or any other publication that publishes or has published gas price indices.

6.    All personnel files relating to any of the following individuals:

      a.    Scott Thompson;

      b.    Darryl Russell Brown;

      c.    Thomas Jefferson Pool;

      d.    Brion Scott McKenna;

      e.    Christopher Silva;

      f.    Michael Lassman;

      g.    Christopher Brae;

      h.    Timothy Beggans;

      i.    Cindy Bottomley;

      j.    Dudley Poston;

      k.    Blake Douglas Herndon;

      l.    Michael Fiser;

      m.    Ronnie Jean Aston;

      n.    Sharon Toscano Crow;

      o.    Frank Lee Field;

      p.    William Edgar Hobbs;

      q.    Stephen James Jaques;

      r.    Duane Mark Lawhorne;

      s.    John David O'Dell;

      t.     Uday Rao;

      u.     Dustin Schoeling;

      v.     Kevin Vann.

7.     Any and all voice recordings of conversations Scott Thompson had with any representative of any gas "price index" publishers, including but not limited to *IFERC* and *Gas Daily*, during the course of his employment at Williams.

8.     Any and all Williams' "authority policy statements" signed by Scott Thompson during his employment at Williams, and the corresponding company policy in effect at the time.

9.     Any and all Williams' "training acknowledgement forms," compliance forms, authority limitation forms and any other acknowledgement form signed by Scott Thompson during his employment at Williams, and the corresponding Williams policy in effect at the time.

10.     Any and all Williams' "training acknowledgement forms," compliance forms, authority limitation forms and any other acknowledgement form signed by other Williams' traders during Scott Thompson's employment at Williams, and the corresponding Williams policy in effect at the time.

11.     Any and all audio recordings made by Williams or any other party between January 1, 1998 and October 31, 2002 of communications relating to the reporting of gas prices and/or volumes by or involving:

      a.     Scott Thompson,

      b.     Darryl Russell Brown,

      c.     Thomas Jefferson Pool, and/or

      d.     Brion Scott McKenna.

# Exhibit C

AO 89 (Rev. 11/91) Subpoena in a Criminal Case

# United States District Court

FOR THE _____ DISTRICT OF _____ COLUMBIA

UNITED STATES OF AMERICA

## SUBPOENA IN A CRIMINAL CASE

V.

SCOTT THOMPSON

CASE NUMBER:
CRIM. NO.: 1:06-CR-00288-RJL

**TO:** Federal Energy Regulatory Commission
Office of General Counsel
888 First St. NE
Washington, DC 20426

☐ **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|-------|-----------|
| United States Courthouse 333 Constitution Ave., NW Washington, DC 20001 | Courtroom 18 |
| | DATE AND TIME June 15, 2007 4p.m. |

☒ **YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):

See attached Schedule A.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| NANCY MAYER-WHITTINGTON | |
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

**Exhibit C**
**1:06-CR-00288-RJL**

## RETURN OF SERVICE(1)

| RECEIVED BY SERVER | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | DATE | | PLACE | |

SERVED ON (PRINT NAME)

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

### DECLARATION OF SERVER(2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                    Date                      Signature of Server

                                   _____
                                            Address of Server

ADDITIONAL INFORMATION

(1) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(2) "Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

**SCHEDULE A TO: RULE 17(c) SUBPOENA TO**
**THE FEDERAL ENERGY REGULATORY COMMISSION**

## I.    DEFINITIONS AND INSTRUCTIONS

1.    "FEDERAL ENERGY REGULATORY COMMISSION" or "FERC" means the United States Federal Energy Regulatory Commission or any division, office, employee or appointee thereof.

2.    "WILLIAMS" means Williams Power Company, Inc., formerly Williams Energy Marketing &Trading Co., and/or its parent, The Williams Companies, Inc, or any predecessor or successor, or the Board of Directors for any of the same ("Williams").

3.    "COMMUNICATION" means any disclosure, transfer or exchange of information between or among two or more persons or companies, including any formal or informal, oral, written or electronically transmitted communication.

4.    "DOCUMENT" or "DOCUMENTS" means the original or any identical copy and all non-identical copies (whether different from the original because of notes or underlining made to it, attachments, annotations, marks, highlighting or otherwise) of any written, printed, electronically generated or retained recorded material, graphic material or electronic data of writings of every kind and description that are fixed in any form. "DOCUMENTS" also includes recordings of telephone conversations if recordings responsive to the requests have been previously identified.

5.    "RELATE TO" or "RELATING TO" means constituting, considering, comprising, containing, concerning, referring to, discussing, regarding, describing, analyzing, reflecting, identifying, commenting, or stating in whole or in part.

6.    Whenever the word "ALL" appears, the word means "ANY AND ALL."

7.    Whenever the word "OR" appears, the word includes "AND" and means "AND/OR."

8.    In this subpoena, the singular includes the plural, and the plural includes the singular. The past tense includes the present tense, and the present tense includes the past tense. The masculine includes the feminine, and the feminine includes the masculine.

9.    "GAS" means natural gas.

10.    documents shall be produced in an order corresponding to each paragraph of this subpoena, or, in the alternative, they may be produced in the same order in which they are maintained in the ordinary course of business.

11.    If you refuse to produce any document herein requested under a claim of privilege, work product, or other reason for non-production, you are requested to submit, in lieu of each such document, a privilege log which:

    a.    identifies the privilege, work product, or other asserted reason for non-production;

    b.    describes the nature and general topic of the type of document;

    c.    identifies the person who prepared the documents and any persons to whom the document was sent or disclosed;

    d.    identifies any person who has seen or had possession of the document; and

    e.    specifies the dates on which the document was prepared, transmitted and received.

12.    This obligation shall be deemed continuing, and any document that you obtain OR locate after the production pursuant thereto, which would have been produced had it been available OR its existence known at that time, is to be supplied forthwith.

13.    No witness need appear on the date and time specified in the subpoena, but McGraw-Hill must identify a witness competent to identify and authenticate the documents or materials produced in response to this subpoena.

## II.    DOCUMENTS TO BE PRODUCED

1.    All documents or communications created or modified by any Williams employee or agent, including but not limited to counsel, that relate facts gathered or findings reached during, or as a consequence of either the Williams internal investigation described in an October 25, 2002, Williams press release entitled "Williams Discloses Natural Gas Trade Reporting Inaccuracies" and/or *Final Report on Price Manipulation in Western Markets: Fact Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* Docket No. PA02-2-000, at ES-1 (Fed. Energy Reg. Comm'n Mar. 2003), or in response to a request or demand of information from FERC and as a consequence of any formal or informal offer or agreement to cooperate with FERC's investigation relating to allegedly false and inaccurate gas price and volume data reports made to industry publications,  including but not limited to employee statements; documents recording, summarizing or reporting the substance and/or details of witness interviews or statements; and/or documents recording, summarizing or reporting legal analyses, legal or management recommendations or conclusions.

# Exhibit D

## AGREEMENT

Williams Power Company, Inc. ("WPC") formerly Williams Energy Marketing &

Trading Co. ("WEMT"), a Delaware Corporation and a wholly owned subsidiary of The

Williams Companies, Inc. ("Williams"), a Delaware Corporation, by its undersigned officer,

pursuant to authority granted by its Board of Directors, the United States Department of Justice

Fraud Section ("Fraud Section") and the United States Attorney's Office for the Northern

District of California ("USAO NDCal") enter into this Agreement in resolution of the Fraud

Section and the USAO NDCal's ongoing criminal investigation into the knowing delivery of

knowingly inaccurate reports concerning a commodities market by certain former WPC

employees (the "Investigation").

     1.    WPC accepts and acknowledges that, if it commits a willful and knowingly

material breach of the terms and conditions of this Agreement, the Fraud Section and/or USAO

NDCal may file a criminal complaint in the appropriate United States District Court charging

WPC with knowingly delivering knowingly inaccurate reports concerning the commodities

market for natural gas, in violation of Title 7, United States Code, Section 13(a)(2).

     2.    WPC acknowledges that the Fraud Section and USAO NDCal have developed

information during the Investigation that certain former WPC employees submitted inaccurate

information to natural gas industry publications as set forth in the Statement of Facts attached

hereto as Annex A and incorporated herein by reference.  By entering into this Agreement and

by, among other things, the substantial remedial actions it has taken to date, its continuing

commitment of full cooperation as directed by the Fraud Section and USAO NDCal, its

agreement to pay substantial monetary fines, and the other undertakings it has made as set forth

herein, WPC accepts and acknowledges responsibility for the conduct of its former employees as

set forth in the Statement of Facts.  WPC agrees it will not contest the admissibility into evidence

of the Statement of Facts in any subsequent criminal proceedings occurring in the event of a breach of this Agreement.

3.    WPC expressly agrees that it shall not, through its present or future attorneys, board of directors, officers, or management employees, make public statements contradicting the Statement of Facts. Should the Fraud Section and USAO NDCal decide in their sole discretion that a public statement by any such person contradicts the Statement of Facts and should be imputed to WPC for the purpose of determining whether WPC has breached this Agreement, they shall notify WPC and provide WPC with an opportunity to publicly correct such statement. WPC shall avoid a breach of this Agreement by publicly correcting such statement within 48 hours after such notification. WPC agrees that in the event that future criminal proceedings were to be brought in accordance with Paragraphs 12 and/or 14 of this Agreement, WPC will not contest the admissibility of the Statement of Facts in any such proceeding.

4.    Consistent with WPC's obligations as set forth above, WPC and its parent company and affiliates, and its present and former officers, agents, and employees shall be permitted to raise and support defenses and/or assert and support affirmative claims in civil and regulatory proceedings relating to the matters set forth in the Statement of Facts. Nothing stated in this Agreement is intended or shall operate as a waiver of WPC's rights under Federal Rule of Evidence 408.

5.    WPC agrees to cooperate fully with the Fraud Section, USAO NDCal, and with any other agency designated by the Fraud Section and/or USAO NDCal, regarding any matter about which WPC has knowledge. WPC's agreement to cooperate shall extend until the completion of the Fraud Section and USAO NDCal's investigation of any criminal activity relating to false reporting concerning natural gas commodities, including any investigations or prosecutions of others.

6.    WPC agrees that its cooperation, as agreed to in Paragraph 5 above, shall include, but is not limited to, the following:

(a)    Completely and truthfully disclosing all information as may be requested by the Fraud Section and/or USAO NDCal with respect to the activities of WPC and its parent company and affiliates, and its present and former officers, agents, and employees, concerning all matters inquired into by the Fraud Section and/or USAO NDCal;

(b)    Assembling, organizing, and providing on request from the Fraud Section and/or USAO NDCal, all documents, records, or other tangible evidence in WPC's possession, custody, or control;

(c)    Not asserting a claim of attorney-client or work-product privilege as to any documents, information, or testimony requested by the Fraud Section and/or USAO NDCal related to internal factual investigations or contemporaneous advice given to WPC concerning the conduct at issue.  Notwithstanding the foregoing, nothing in this Section shall be considered a waiver of the attorney-client or attorney work product privileges with respect to the opinions of counsel, mental impressions of counsel, communications between counsel, or lawful advice of counsel, and WPC, its parent company and affiliates shall not be required to produce documents or other evidence with respect to such opinions, mental impressions, communications or advice. In making production of any such documents, WPC neither expressly nor implicitly waives its right to assert any privilege with respect to the produced documents or the subject matter thereof that is available under law against non-parties to this Agreement.

(d)    Using its best efforts to make available its employees to provide information and/or testimony as requested by the Fraud Section and/or USAO NDCal, including sworn testimony before a federal grand jury or in federal trials, as well as interviews with federal law

enforcement authorities. Cooperation under this Paragraph will include identification of witnesses who, to WPC's knowledge, may have material information regarding the matters under Investigation;

(e)    Using its best efforts to make available for interviews, or for testimony, present or former WPC officers, directors, and employees as requested by the Fraud Section and/or USAO NDCal;

(f)    Providing testimony and other information deemed necessary by the Fraud Section, USAO NDCal or a court to identify or establish the original location, authenticity, or other evidentiary foundation necessary to admit into evidence documents in any criminal or other proceeding as requested by the Fraud Section and/or USAO NDCal.

7.    WPC shall continue to comply with any currently in force written agreements between WPC and any other federal agency as long as any such agreements shall remain in effect.

8.    WPC agrees to pay $50,000,000 to the United States Treasury as a monetary penalty. WPC shall make such payments on the following terms: $20,000,000 within thirty (30) days of the date of the Agreement, and the remaining $30,000,000 to be paid on or before the one year anniversary of this Agreement. If WPC fails to fulfill its obligations to pay the penalty, WPC will not oppose entry of a monetary judgment against it for the unpaid amount. WPC also will not resist collection efforts by the Fraud Section and USAO NDCal.

9.    In light of WPC's remedial actions to date and its willingness to (i) acknowledge responsibility for the conduct of its employees; (ii) continue its cooperation with the Fraud Section, USAO NDCal and other governmental regulatory agencies; (iii) demonstrate its future good conduct and full compliance with the commodities trading laws and generally accepted

accounting procedures; and (iv) consent to payment of the monetary penalty set forth in Paragraph 8 above, the Fraud Section and USAO NDCal shall defer any prosecution of WPC pursuant to Paragraph 1.

10.    The Fraud Section and USAO NDCal agree that if WPC has not committed a willful and knowingly material breach of this Agreement for fifteen (15) months from the date of the Agreement, this Agreement shall expire and no criminal prosecution of WPC for matters discussed in this Agreement will be instituted by the Fraud Section or the USAO NDCal. Should the Fraud Section or USAO NDCal determine during the term of this Agreement that WPC has committed any federal crime commenced subsequent to the date of this Agreement, WPC shall, in the sole discretion of the Fraud Section or USAO NDCal, thereafter be subject to prosecution for any federal crimes of which the Fraud Section and/or USAO NDCal have knowledge.

11.    Except in the event of a breach of this Agreement, all investigations relating to the matters set forth in the Statement of Facts that have been, or could have been, conducted by the Fraud Section and USAO NDCal prior to the date of this Agreement shall not be pursued further as to WPC or its parent company and affiliates. The Fraud Section and the USAO NDCal represent that they are aware of no other investigations relating to submission of false, inaccurate, or altered trade data by WPC or its parent company and affiliates as described in the Statement of Facts or to any criminal activities arising from such false, inaccurate, or altered reporting as of the signing of this Agreement.

12.    Should the Fraud Section and USAO NDCal determine that WPC has committed a willful and knowingly material breach of any provision of this Agreement, the Fraud Section and USAO NDCal shall provide written notice to WPC of the alleged breach, and provide WPC with a two-week period in which to request to make a presentation to the Assistant Attorney

General in charge of the Criminal Division to demonstrate that no breach has occurred, or, to the extent applicable, that the breach is not willful or knowingly material or has been cured. The parties hereto expressly understand and agree that should WPC fail to request an audience with the Assistant Attorney General in charge of the Criminal Division within a two-week period of the potential breach, it shall be conclusively presumed that WPC is in willful and material breach of this Agreement. The parties further understand and agree that the Assistant Attorney General's exercise of discretion under this paragraph is not subject to review in any court or tribunal outside of the Criminal Division of the Department of Justice. In the event of a breach of this Agreement that results in a prosecution of WPC, such prosecution may be premised upon any information provided by or on behalf of WPC to Fraud Section and/or USAO NDCal or other government agency at any time, unless otherwise agreed when the information was provided. The Fraud Section and the USAO NDCal agree, however, to recommend to the Court that the amount paid pursuant to this Agreement should be offset against whatever fine the Court shall impose as part of its judgment in the event of a subsequent prosecution.

13.    WPC shall expressly waive all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Northern District of California for the period that this Agreement is in effect.

14.    In case of the willful and knowingly material breach of this Agreement, any prosecution of WPC relating to the false reporting of trade data to industry publications or any crime arising therefrom that is not time-barred by the applicable statute of limitations as of the date of this Agreement may be commenced against WPC notwithstanding the expiration of any

applicable statute of limitations during the deferred prosecution period and up to the determination of any such willful and knowingly material breach. WPC's waiver of the statute of limitations is knowing and voluntary and in express reliance on the advice of counsel.

15.    WPC agrees that, if it sells or merges all or substantially all of its business operations as they exist as of the date of this Agreement to or into a single purchaser or group of affiliated purchasers during the term of this Agreement, it shall include in any contract for sale or merger a provision binding the purchaser/successor to the obligations described in this Agreement.

16.    It is understood that this Agreement is binding on WPC, the Fraud Section and USAO NDCal, but specifically does not bind any other federal agencies, or any state or local law enforcement or licensing authorities, although the Fraud Section and USAO NDCal will bring the cooperation of WPC and its compliance with its other obligations under this Agreement to the attention of other federal agencies, state and local law enforcement, or licensing authorities, if requested by WPC or its attorneys. It is understood that this Agreement also excludes any natural persons. It is the intent of the parties to this Agreement that the Agreement does not confer or provide any benefits, privileges or rights to any individuals or other entities other than the parties hereto, and that nothing in the Agreement shall be admissible in any proceeding other than a proceeding brought by the Fraud Section or the USAO NDCal. Moreover, WPC may raise defenses and/or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not otherwise violate any term of this Agreement.

17.    WPC, the Fraud Section and USAO NDCal agree that this Agreement may be publicly disclosed.

7

18.    This Agreement sets forth all the terms of the agreement between WPC, the Fraud

Section and USAO NDCal. No modifications or additions to this Agreement shall be valid

unless they are in writing and signed by the Fraud Section, the USAO NDCal, WPC's attorneys,

and a duly authorized representative of WPC.

**On Behalf of the United States Department of Justice Fraud Section:**


_____    _____

DATE

PAUL E. PELLETIER
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice


ROBERTSON T. PARK
Assistant Chief, Fraud Section
Criminal Division
United States Department of Justice


AMANDA L. RIEDEL
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice


_____DATE

KEVIN V. RYAN
United States Attorney
Northern District of California


KESLIE STEWART
Assistant United States Attorney
Northern District of California

**On Behalf of WPC:**
2-21-06

DATE

Williams Power Company, Inc.


8

## ANNEX A:
## STATEMENT OF FACTS

For purposes of resolving a criminal investigation by the United States Department of Justice Fraud Section ("Fraud Section") and the United States Attorney's Office for the Northern District of California ("USAO NDCal") into the knowing delivery of knowingly inaccurate reports concerning a commodities market by certain WPC employees (the "Investigation"), the following statement of facts is set forth:

1.    Williams Power Company, Inc. ("WPC") is a Delaware corporation headquartered in Tulsa, Oklahoma. It is a separately incorporated, wholly-owned subsidiary of The Williams Companies, Inc. ("Williams"). WPC traded and marketed natural gas and related products and services.

2.    WPC divided its natural gas traders into groups, referred to as desks. Some of the desks corresponded with geographic regions of the United States: the East, Mid-Continent and West. WPC also established other trading desks, including Forward Trading desks, for trading natural gas futures, options contracts, and other instruments related to, among other things, the New York Mercantile Exchange, a primary forum for energy trading. The desks traded a variety of physical and financial instruments, including fixed-price physical natural gas, derivatives, swaps, index-based, over-the-counter, and physical contracts. Each desk was staffed by several traders.

3.    Certain WPC natural gas traders entered data regarding trades they made into spreadsheets that in turn were delivered to trade publications. These trade publications generated market price indices for natural gas at various delivery points, or "hubs," based in part on information received from industry participants. Natural gas traders used the published indices

1

to price and settle certain physical and over-the-counter financial derivative natural gas

transactions.

4.      *Inside FERC ("IFERC")* Gas Market Report, a publication of Platts, a McGraw-

Hill company, publishes market price indices for natural gas at various delivery points, or

"hubs," based in part on information received from industry participants.  From at least June 1,

1998, through approximately October 31, 2002, certain WPC employees submitted data to

*IFERC* regarding natural gas trades, while acting within the course and scope of their

employment.  *IFERC* editors exercised judgment and attempted to exclude numbers that

diverged from the majority of trades at a given hub.  WPC does not contest that misrepresenting

either the prices or volumes reported to *IFERC* could alter the published *IFERC* index prices.

5.      From on or about June 1, 1998, through on or about October 31, 2002, certain

WPC employees submitted inaccurate reports to *IFERC* regarding trades of natural gas entered

into by WPC during bid week, the last several business days of the month during which trades

for gas flowing the following month were executed.

6.      From approximately June 1, 1998, through approximately October 31, 2002, to

benefit WPC's gas trading positions, certain WPC employees submitted trade data to *IFERC* for

WPC's East and West desks which contained knowingly inaccurate data, including incorrect

volume and/or prices, fictitious trades or incomplete reports of actual trades.  Certain WPC

employees, on limited occasions, also attempted to conceal the falsity of these submissions by

providing misleading and inaccurate information to *IFERC* employees who contacted them to

confirm reported trade information.

7.      In approximately October 2002, when media reports exposed false reporting by

traders at another energy company, WPC's management discovered the above-described conduct

and reported this information to the Commodity Futures Trading Commission ("CFTC"). WPC

has cooperated with the CFTC's inquiry into possible inaccurate reporting by WPC, its current

and former employees, and with the Investigation.

8.      There are other matters known to the parties that are not included in this statement

of facts.

3