UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.  06-288 |
| | ) | |
| SCOTT THOMPSON | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S
MOTION TO COMPEL THE GOVERNMENT'S DISCLOSURE OF
MATERIAL VOLUNTARILY DISCLOSED TO IT BY THE WILLIAMS
COMPANIES, INC.,AND MOTION FOR AN ORDER DIRECTING THE CLERK
TO ISSUE CERTAIN SUBPOENAS *DUCES TECUM* RETURNABLE BEFORE TRIAL**

The United States of America, by and through its attorney, the Fraud Section of the

Criminal Division of the United States Department of Justice ("the Fraud Section"), hereby

submits its responses to the defendant's Motion To Compel The Government's Disclosure Of

Material Voluntarily Disclosed To It By The Williams Companies, Inc. ("Williams") and Motion

For An Order Directing The Clerk To Issue Certain Subpoenas *Deuces Tecum* Returnable Before

Trial.  For the reasons stated below, the Court should deny the defendant's motion to compel

because it seeks non-discoverable, privileged work product.  The government takes no position,

however, on the defendant's motion for an order directing the Clerk to issue subpoenas *duces*

*tecum* in this matter.

FACTS

Beginning in approximately the fall of 2002, the California energy crisis prompted the

Federal Bureau of Investigation ("FBI"), the U.S. Attorney's Office for the Northern District of

California ("the U.S. Attorney's Office"), the Department of Justice's ("DOJ") Antitrust Division

and the Fraud Section to examine the practices of certain energy companies, including the

defendant's former employer Williams, a Delaware corporation headquartered in Tulsa, Oklahoma.  At approximately the same time, in reaction to media stories of false reporting of natural gas trades at other companies, Williams engaged in an internal investigation, discovered false reporting by its natural gas traders, and disclosed this activity to various government agencies.

The Fraud Section learned that Williams operated a subsidiary, Williams Energy Marketing & Trading Co. ("WEMT"), that traded and marketed natural gas and related products and services.  WEMT, which divided its natural gas traders into group, referred to as "desks," traded a variety of physical and financial instruments, including fixed-price natural gas, derivatives, swaps, index-based, over-the-counter and physical contracts on the New York Mercantile Exchange, or NYMEX.  From May 1999 through March 2001, the defendant, Thompson, was a basis trader and the lead trader for WEMT's East Desk.  Unlike cash traders that bought and sold natural gas intended for physical delivery, basis traders, like the defendant, entered into "financial trades" on the NYMEX, called futures contracts, or off exchange directly between companies, called forward contracts, that could be used to speculate and hedge against price risk in the physical markets.  Often, contract prices were tied to index prices published by various market reports.

*Inside FERC's* ("*IFERC*") *Gas Market Report*, a publication of Platts, a McGraw-Hill Company based in this District, published market price indices for natural gas at various delivery points, or "hubs," based on information received from natural gas traders, including traders at Williams.  In 1999, Kelley Doolan, an editor at *IFERC*, distributed a spreadsheet to natural gas trading companies, including Williams, that provided instructions for reporting trade data to

*IFERC*.  The spreadsheet instructed traders to report only fixed-price, baseload deals negotiated during bid week, the last week of trading for the month.  The spreadsheet also instructed the traders to email their trading data to Kelley Doolan, who worked at *IFERC*'s offices in Washington, D.C.  Thompson used this spreadsheet when he reported false trading data on behalf of Williams to *IFERC* via interstate wire.

      *IFERC* used the trading data submitted by market participants like Williams to determine a volume-weighted average of natural gas prices at various hubs.  These indices could be manipulated in a variety of ways, including reporting trades that never took place, failing to report actual trades, reporting false volumes, reporting false prices and/or reporting false counter-parties to the trades.  By manipulating the data reported to *IFERC*, traders at Williams, including the defendant, attempted and often did skew the prices ultimately published in *IFERC*'s First Of The Month ("FOM") index.  In this way, the defendant and other traders at Williams reported false information about a commodity in interstate commerce in an attempt to manipulate the published index price to the benefit of Williams and/or their desk's trading positions.

      In February 2006, Williams entered into a deferred prosecution agreement ("DPA") with the Fraud Section and the U.S. Attorney's Office.  This agreement resulted from a multi-year investigation by the FBI, the U.S. Attorney's Office, and the Fraud Section; an internal investigation by Williams; and numerous settlement conferences and negotiation sessions between counsel for Williams and lawyers for the government.  During the period leading up to the DPA, Williams produced certain privileged materials to the government in order to cooperate with its investigation and move the matter toward settlement.  These privileged materials included (a) notes of interviews conducted by Williams' counsel; (b) analyses of Williams'

natural gas trading positions; and © reports of Williams' internal investigation of various

matters.  Pursuant to the DPA, Williams admitted that its traders reported false natural gas

trading data to *IFERC* from at least June 1, 1998, through approximately October 31, 2002, and

agreed to pay a $50,000,000 penalty.

On September 28, 2006, a Grand Jury in the District of Columbia returned an indictment

charging the defendant with one count of conspiracy to violate the Commodity Exchange Act and

commit wire fraud, in violation of 18 U.S.C. § 371.  No trial date has been set.  The government

has produced or made available all non-privileged relevant evidence in compliance with and far

in excess of its Rule 16 obligations, as detailed below.

In his May 4, 2007 motion to compel, the defendant seeks access to Williams' attorney

work product.  The defendant bases his motion on an argument that Williams waived its

attorney-client and work product privileges when it produced these materials to the government.

The government concedes, under the law of this Circuit, that Williams waived its attorney-client

privilege when it produced the above-described materials to the government.  The government

believes, however, that Williams preserved the protected status of the work product it produced

to the government because the productions were subject to non-waiver agreements.

<u>DISCOVERY TO DATE</u>

Since his indictment on September 28, 2006, the defendant, through his counsel, has been

or will be provided by May 18, 2007, with all relevant (and a great deal of irrelevant), non-

privileged material either provided to the government by Williams or generated by the

government since the inception of this investigation.  Those materials include but are not limited

to (a) approximately 20 boxes of paper documents produced to the government by Williams

concerning Williams' natural gas trading activities; (b) approximately 30 boxes of paper documents produced to the government by Williams concerning Williams' electricity business; © documents obtained through subpoena by the US Attorney's Office from McGraw-Hill concerning *IFERC* and *Gas Daily* reporting by Williams and other companies; (d) emails collected and produced by Williams to the government from key Williams' employees, including possible cooperators in the case against the defendant; (e) CFTC transcripts of Williams employees who were deposed during the Commission's investigation; (f) spreadsheets of Williams' records of its natural gas trading activity, referred to as WilTrade data, that Williams produced to the government; (g) agent reports of interviews with the defendant and with his co-conspirators; and (h) telephone calls between former Williams natural gas traders and representatives of *IFERC* and *Gas Daily*.

Although the defendant decries the supposed "slow pace of discovery" in his motion, the reality is that the government has gone far beyond its Rule 16 obligations in providing discovery to the defendant.  In fact, the government has produced or will have produced within the week in excess of 40,000 pages of discovery.  The government has also endeavored not only to turn over what it considers to be the most relevant evidence, including the key documents and telephone calls it intends to use at trial, but all of the source data provided to it by Williams, often in both hard copy and electronic form, to assist the defendant should he decide to engage an expert.

The only materials that will not have been produced as of May 18, 2007, are statements and reports of witnesses pursuant to 18 U.S.C. § 3500, which will be produced in advance of trial once the government determines its witness list, and privileged work product materials generated by Williams' counsel and produced to the government pursuant to Williams' cooperation with

the Fraud Section and the U.S. Attorney's Office's investigation.  The defendant now seeks to

compel the government to turn over that material, which is protected by a privilege held by

Williams, not the government.  Because Williams made only a partial waiver of the work product

privilege in this case, the government believes these materials remain protected and therefore

cannot produce these materials to the defendant unless either Williams makes a complete waiver

of its privilege, which it has not signaled a willingness to do, or the Court orders disclosure.

<u>WILLIAMS' DID NOT WAIVE ITS WORK PRODUCT PRIVILEGE WHEN
IT PRODUCED MATERIALS TO THE GOVERNMENT</u>

**A.     Terms of Production**

On April 25, 2003, Williams' counsel produced notes of interviews conducted by

Williams' outside counsel regarding natural gas reporting issues.  The terms of the production

were spelled out in the transmittal letter.  That letter indicated that the production was, "a limited

waiver of the attorney work-product protection, limited to these notes, this grand jury

investigation by your office, and, specifically, the investigation of natural gas price reporting

issues."  Williams further stated that it "expressly reserves and does not waive any privilege and

protection with respect to any other document and any other subject matter.  Further, we

expressly reserve and do not waive any privilege or protection for these documents as to any

other action, investigation, case, matter or party."  See Attachment A.  Attorneys for the

government, in conversations with Williams' counsel and in accepting these materials, agreed to

these terms.

When the same interview notes were produced by Williams to the CFTC on May 7, 2003,

counsel for the company included the non-waiver language detailed above in its transmittal letter

but also confirmed Williams' agreement with the CFTC that the CFTC "will not copy these documents" and "promptly will return them upon [its] review."  The letter confirmed the intention of all parties that Williams' "sending these documents to [the CFTC] for [its] review shall not be deemed in any way to expand the limited waiver associated with our production of these documents to the Department of Justice."  See Attachment B.

When Williams made subsequent productions of its counsel's notes of interviews to the DOJ on July 14, 2003, and July 23, 2003, the cover letters contained the same express agreement between the company and the government that the production did not constitute a waiver of any privilege or protection with respect to other materials, action, investigation, case, matter or party. See Attachments C and D.  Moreover, when Williams produced any attorney-generated materials, these same conditions of production were explicitly stated and agreed to by attorneys for the DOJ.

On October 8, 2003, attorneys for and representatives of Williams made a presentation to lawyers from the U.S. Attorney's Office and the Fraud Section in connection with the investigation.  As part of this presentation, Williams provided a memorandum and exhibits prepared by counsel for Williams to the DOJ.  The memorandum and exhibits are marked as "**CONFIDENTIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 11(e)(6)** *(sic)* **and FEDERAL RULE OF EVIDENCE 408.**"  All of the parties in attendance understood that the presentation and written materials consisted of the opinions of Williams and its counsel and were intended to influence the government's charging decisions.

Similarly, on August 12, 2005, counsel for Williams made a PowerPoint presentation on the same topics to lawyers for the U.S. Attorney's Office and the Fraud Section.  This

presentation was made immediately prior to and in anticipation of the final negotiations between

the government and the company regarding its criminal liability, which resulted in the execution

of the DPA.  Each slide of the PowerPoint presentation contains a header that reads,

"**CONFIDENTIAL – FOR SETTLEMENT DISCUSSIONS ONLY**."  All parties to the

meeting understood this to be the terms under which Williams engaged in these discussions.

### B.    Legal Analysis

The Supreme Court has held that "at its core, the work product doctrine shelters the

mental processes of the attorney, providing a privileged area within which he can analyze and

prepare his client's case," United States v. Nobles, 422 U.S. 225, 238 (1975), and that the work-

product doctrine is distinct from and broader than the attorney client privilege.  Id. at 237, n.11.

In Permian Corp. v. United States, 665 F.2d 1214, 1219 (D.C. Cir. 1981), the DC Circuit Court

found that "while the mere showing of a voluntary disclosure to a third person will generally

suffice to show a waiver of the attorney-client privilege, it should not suffice in itself for waiver

of the work product privilege."

Although the DC Circuit has held that a corporation that disclosed materials to the SEC

could not selectively assert its work product privilege against plaintiffs seeking discovery of the

materials, in In re Subpoenas Duces Tecum, 738 F.2d 1367 (D.C. Cir. 1984), that matter is

factually distinguishable from this case.  In Subpoenas Duces Tecum, the Court found that a

party cannot be permitted to partially waive the attorney-client privilege in order to "pick and

choose among his opponents, waiving the privilege for some and resurrecting the claim of

confidentiality to obstruct others, or to invoke the privilege as to communications whose

confidentiality he has already compromised for his own benefit."  Id. at 1370 (citing Permian,

665 F.2d at 1221).  The Court conceded, however, that the harder question concerned a potential

waiver of the work product privilege.  In re Subpoenas Duces Tecum, 738 F.2d at 1370.

       Finding that a waiver of the work product privilege had occurred when Tesoro Petroleum

Corporation produced documents to the SEC that were later sought by civil litigants, the Court

relied upon three essential factors, all of which do not exist in the matter before this Court:

(a) the party claiming the privilege sought to use it in a way that is not consistent with the

purpose of the privilege; (b) the holder of the privilege had no reasonable expectation that the

disclosed materials would kept confidential by the SEC; and © waiver of the privilege in these

circumstances would not interfere with any policy objectives of the privilege.  Id. at 1372.

       The first factor relied upon by the Court of Appeals in Subpoena Duces Tecum is not

applicable here.  In that case, the Court expressed concern that parties were attempting to use a

partial waiver of the work product privilege to exact some kind of advantage.  In this case, the

holder of the privilege, Williams, is not a party to the underlying criminal case against

Thompson.  Williams cannot gain any advantage by asserting and preserving its privilege, other

than to ensure that the thoughts, impressions and materials generated by its counsel in the face of

investigations remain private.  Not only can Williams gain no advantage in this matter by seeking

to maintain its privilege, but Williams would be harmed by requiring disclosure of the materials

in a case to which it is not even a party.

       Second, and most importantly, Subpoena Duces Tecum is clearly distinguishable because

the District Court found, and the Court of Appeals affirmed, that there had been "no commitment

by the SEC to receive and hold the documents in confidence on terms which negate the waiver of

[Tesoro's] work product privilege..."  Id. at 1373 (internal citations omitted).  By contrast,

Williams made clear, and the government accepted, the terms under which the documents now sought by the defendant were produced, namely in a manner that would ensure their confidentiality and that did not waive any privilege with respect to any other action, investigation, case, matter or party.

In addition, the Court in Subpoena Duces Tecum relied in part on the fact that Tesoro voluntarily provided documents to the SEC in order to persuade it not to engage in a formal investigation of possible wrongdoing. The Court noted that "[t]he distinction between voluntary disclosure and disclosure by subpoena is that the latter, being involuntary, lacks the self-interest which motivates the former. As such, there may be less reason to find waiver in circumstances of involuntary disclosure." Id. Those circumstances exist here. As evidenced in the transmittal letters between Williams' counsel and the DOJ and CFTC, attached hereto as Attachments A through D, the interview notes "were produced in response to the grand jury subpoena issued to the Williams Companies dated November 4, 2002."

Finally, in this case, policy arguments actually weigh in favor of the Court maintaining Williams' privilege. As noted above, they are not a party to this case and thus, obtain no advantage from non-disclosure of the materials. Second, Williams should not be punished for its cooperation with the government. Nor should companies seeking credit from the DOJ in its charging determinations be deterred from fully cooperating for fear that their attorney's confidential and privileged work product will be disclosed to third parties in matters in which they are not participating.

A more analogous case concerning the discovery of work product privileged materials produced to the government during an investigation of natural gas reporting was addressed

recently by the District Court for the Southern District of New York in In re Natural Gas Commodity Litig., 232 F.R.D. 208 (S.D.N.Y. 2005).[1]  In that matter, individuals who traded natural gas futures contracts on the NYMEX sued energy companies, including American Electric Power Co. ("AEP"), whose traders were discovered to have engaged in inaccurate reporting of natural gas transactions to trade publications.  The plaintiffs alleged that the false reporting manipulated the natural gas futures market, in violation of the Commodity Exchange Act.  The plaintiffs sought discovery from AEP, among others, of work product materials prepared by AEP's counsel and produced to the DOJ and other agencies claiming the production waived any privilege held by AEP.[2]

The Court found that AEP had not made a complete waiver of its work product privilege because it had produced materials to the DOJ, FERC, and the CFTC under a limited and partial waiver, as reflected in AEP's agreement with the government that "as to third parties, there is no waiver of privilege at all; the information in the memorandum is disclosed for the [government]'s staff alone in furtherance of our settlement discussions and the resolution of the investigation as to [AEP]."  In re Natural Gas Commodity Litig.,  No. 03 Civ. 66186VMAJP, 2005 WL 1457666, at *2 (S.D.N.Y. June 21, 2005).  Although the Second Circuit had held that "the waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to

---

[1] The District Court's decision in In re Natural Gas Commodity Litig., 232 F.R.D. 208 (S.D.N.Y. 2005) affirms the Magistrate's decision in In re Natural Gas Commodity Litig., No. 03 Civ. 66186VMAJP, 2005 WL 1457666 (S.D.N.Y. June 21, 2005), which lays out the facts and legal reasoning adopted by the District Court.

[2] Like Williams, AEP entered into a DPA with the Fraud Section in February 2005, admitting that its natural gas traders had submitted false trading information to IFERC and agreeing to pay a $30 million penalty.

other parties," Id. at *5 (quoting In re Steinhardt Partners, L.P., 9 F3d 230, 234-35 (2d Cir.

1993)), it declined to adopt a *per se* rule that all voluntary disclosures to the government waive

work product protection.  In re Steinhardt Partners, 9 F.3d at 236.

       Instead, the Court in Steinhardt Partners found that a determination of waiver in matters

of government investigations should be done on a case-by-case basis to account for situations

where the disclosing party and the government share a common interest or situations where the

government agency and the party have entered into an explicit agreement that requires the

government to maintain the confidentiality of the disclosed materials.  Id.,"  In re Natural Gas

Commodity Litig.,  No. 03 Civ. 66186VMAJP, 2005 WL 1457666, at *6 (S.D.N.Y. June 21,

2005).  In the matter at hand, Williams' production of its settlement memorandum and exhibits,

as well as its PowerPoint slides concerning resolution of the case, consist of materials where the

disclosing party and the government shared a common interest; i.e. to resolve the investigation of

Williams.  Further, all of the work product materials given to the government by Williams were

produced pursuant to an explicit agreement to maintain their confidentiality.

       The Court in the Natural Gas Commodity Litigation case also prevented disclosure of

AEP's counsel's analyses of the company's trading positions based on the fact that AEP had

produced to the plaintiffs the factual documents underlying the work product information

provided to the government.  Id. at *8.  Again, the AEP case is factually analogous to this matter

before the Court because the government has provided or will provide in the immediate future all

of the underlying data relied upon by Williams' counsel in producing its analyses of Williams'

trading data.  As the Court held in Natural Gas Commodity Litigation, "[s]ince the data used in

[the company's] analyses have been provided to plaintiffs, plaintiffs suffer no hardship by not

-12-

having [the company's] analyses." Id.  Similarly, the government's provision of all of the underlying data that Williams produced and that was used by the company's counsel to prepare work product privileged reports to the government mitigates the defendant's substantial need for the privileged material.

In affirming the Magistrate's decision, the District Court went on to note that the plaintiffs had failed to demonstrate a substantial need for AEP's counsel's interview memoranda in their motion to compel.  In re Natural Gas Commodity Litig., 232 F.R.D. at 212.  Similarly, in this case, the defendant has failed to identify a compelling reason why he has a substantial need for Williams' privileged interview notes.[3]

Due to the similar conditions under which AEP and Williams produced materials to the government, namely with the explicit agreement and expectation that the materials would be kept confidential and that their production resulted in no waiver of the work product privilege with respect to any other action, investigation, case, matter or party, this Court should find that the materials sought by the defendant are protected work product material.

<u>WORK PRODUCT PROTECTED MATERIAL SOUGHT
BY THE DEFENDANT IS NOT EVIDENCE AND IS NOT
DISCOVERABLE UNDER BRADY, GIGLIO OR ITS PROGENY</u>

The defendant also seeks the above-described privileged material pursuant to the government's obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972) and its progeny.  The government is mindful of its obligations under these cases, but is not aware of any exculpatory information contained in the materials sought by the

---

[3] It should be noted that there were no interviews of the defendant conducted by Williams' counsel pursuant to the internal investigation because the defendant had left the company.

defendant. It should be noted that these materials, namely attorney notes of interviews and reports prepared by counsel, are not evidence, in as much as the material sought is both hearsay under Federal Rule of Evidence 801© and potentially evidence of compromise or offer to comprise under Federal Rule of Evidence 408. Both Brady and Giglio focus on the government's obligation to disclose *evidence* favorable to the accused. Further, since the defendant had left Williams at the time of its internal investigation, there are no statements of the defendant recorded in the privileged work product of Williams' counsel. As such, there are no statements of the defendant in the government's possession, other than the FBI 302 report, which has previously been produced.

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUBPOENAS *DUCES TECUM*

The government takes no position on the defendant's Motion For An Order Directing The Clerk To Issue Certain Subpoenas *Deuces Tecum* Returnable Before Trial.

Date:  May 15, 2007                    STEVEN A. TYRRELL
                                       CHIEF, FRAUD SECTION


                                       ROBERTSON PARK
                                       ASSISTANT CHIEF, FRAUD SECTION


                                  By: /s/ AMANDA RIEDEL
                                       Trial Attorney, Fraud Section
                                       U.S. Department of Justice
                                       (202) 514-0930

-14-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of May, 2007, a true copy of the foregoing

Government's Response to the defendant's Motion To Compel The Government's Disclosure Of

Material Voluntarily Disclosed To It By The Williams Companies, Inc. and Motion For An

Order Directing The Clerk To Issue Certain Subpoenas *Deuces Tecum* Returnable Before Trial

was sent via electronic mail to:

Adrian D. Mebane, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

By: /s/  AMANDA RIEDEL
Trial Attorney, Fraud Section
U.S. Department of Justice
(202) 514-0930

Attachment A



# GRAYCARY.

1755 Embarcadero Road
Palo Alto, CA 94303-3340
*www.graycary.com*
**O]** 650-833-2297
**F]** 650-320-7401

April 25, 2003
*VIA MESSENGER*

Keslie Stewart, Esq.
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
Room 10-0101
San Francisco, CA 94102

**Re:**   **The Williams Companies**

Dear Ms. Stewart:

Enclosed are documents bates numbered                                                           which
are being produced in response to the grand jury subpoena issued to The Williams Companies
dated November 4, 2002.  These documents constitute

**REDACTED**

REDACTED                                                        REDACTED

This production is a limited waiver of the attorney work-product protection, limited to these
this grand jury investigation by your office, and, specifically, the investigation of natural gas price
reporting issues.  This production excludes
having only to do with issues other than natural gas price reporting.  We expressly reserve and do
not waive any privilege and protection with respect to any other document and any other subject
matter.  Further, we expressly reserve and do not waive any privilege and protection for these
documents as to any other action, investigation, case, matter, or party.

We understand that these        will be afforded Rule 6(e) protection under the Federal Rules of
Criminal Procedure, and to the extent possible you will assist Williams in preserving the
confidentiality of these

**Gray Cary Ware & Freidenrich LLP**

Keslie Stewart, Esq.
April 25, 2003
Page Two

Please do not hesitate to contact me if you have any questions or concerns regarding this matter.

Very truly yours,

**Gray Cary Ware & Freidenrich LLP**

Edward P. Davis, Jr.
*edavis@graycary.com*

Enclosures

Gray Cary\SF\3087491.1
2102289-13

Attachment B

# GRAYCARY.

153 Townsend Street, Suite 800
San Francisco, CA 94107-1907
www.graycary.com
O] 415-836-2582
F] 415-836-2501

May 7, 2003
*VIA FACSIMILE (W/O ENCL.) AND FEDERAL EXPRESS*

Steven Ringer, Esq.
U.S. Commodity Futures Trading Commission
140 Broadway
New York, NY  10005

Re:    **The Williams Companies**

Dear Mr. Ringer:

**REDACTED**

Enclosed are copies of documents bates numbered
        which were produced to the U.S. Department of Justice in response to the grand jury
subpoena issued to The Williams Companies dated November 4, 2002.  This confirms our
agreement that you will not copy these documents and you promptly will return them upon your
review.  Further, this confirms that we are not waiving any privilege or protection, including Rule
6(e) protection under the Federal Rules of Criminal Procedure, by sending these documents to you
for your review, and we expressly reserve all privileges and protections.

These documents constitute

**REDACTED**

**REDACTED**

These documents are afforded Rule 6(e) protection under the Federal Rules of Criminal Procedure.
Our production of these documents to the Department of Justice constituted a limited waiver of the
attorney work-product protection, limited to these          the grand jury investigation by the
Department of Justice, and, specifically, the investigation of natural gas price reporting issues.  Our
production excluded                                              having only to do with
issues other than natural gas price reporting.  We expressly reserved and did not waive any
privilege and protection with respect to any other document and any other subject matter.  Further,
we expressly reserved and did not waive any privilege and protection for these documents as to
any other action, investigation, case, matter, or party.  Our sending these documents to you for your
review shall not be deemed in any way to expand the limited waiver associated with our production
of these documents to the Department of Justice.

**Gray Cary Ware & Freidenrich** LLP

Steven Ringer, Esq.
May 7, 2003
Page Two


Please do not hesitate to contact me if you have any questions or concerns regarding this matter.

Very truly yours,

**Gray Cary Ware & Freidenrich** LLP

Walter F. Brown, Jr.
*wbrown@graycary.com*

Enclosures


Gray Cary\SF\3087925.1
2102289-13

Attachment C

# GRAYCARY.

1755 Embarcadero Road
Palo Alto, CA 94303-3340
*www.graycary.com*
O] 650-833-2297
F] 650-320-7401

July 14, 2003
*VIA MESSENGER*

Keslie Stewart, Esq.
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
Room 10-0101
San Francisco, CA 94102

Re:    The Williams Companies

Dear Ms. Stewart:

**REDACTED**

**REDACTED**

enclosed are documents bates numbered
which are being produced in response to the grand jury subpoena issued to The Williams
Companies dated November 4, 2002.

This production is a limited waiver of the attorney work-product protection and rights under joint
defense agreements, limited to these notes, this grand jury investigation by your office, and,
specifically, the investigation of natural gas price reporting issues.  This production excludes
portions                                                                            purely constituted attorney thoughts or
                                                                                     We expressly reserve and
do not waive any privilege and protection with respect to any other document and any other subject
matter.  Further, we expressly reserve and do not waive any privilege and protection for these
documents as to any other action, investigation, case, matter, or party.  Finally, we understand that
these        will be afforded Rule 6(e) protection under the Federal Rules of Criminal Procedure,
and to the extent possible you will assist Williams in preserving the confidentiality of

**REDACTED**                                    **REDACTED**

**Gray Cary Ware & Freidenrich** LLP

Keslie Stewart, Esq.
July 14, 2003
Page Two


Please do not hesitate to contact me if you have any questions or concerns regarding this matter.

Very truly yours,

**Gray Cary Ware & Freidenrich** LLP

Edward P. Davis, Jr.
*edavis@graycary.com*

Enclosures

cc:    Stephen A. Mansfield, Esq.
       John M. Potter, Esq.

Gray Cary\SF\3089919.1
2102289-13

Attachment D

# GRAYCARY.

1755 Embarcadero Road
Palo Alto, CA  94303-3340
*www.graycary.com*
O] 650-833-2297
F] 650-320-7401

July 23, 2003
*VIA FACSIMILE AND U.S. MAIL*

Keslie Stewart, Esq.
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
Room 10-0101
San Francisco, CA 94102

**Re:     The Williams Companies**

Dear Ms. Stewart:                                                        **REDACTED**

Daryl Brown's counsel has authorized our production of
                                                regarding natural gas price reporting issues
            Accordingly,
enclosed are documents bates numbered                                               which
are being produced in response to the grand jury subpoena issued to The Williams Companies
dated November 4, 2002.

This production is a limited waiver of the attorney work-product protection and rights under joint
defense agreements, limited to these notes, this grand jury investigation by your office, and,
specifically, the investigation of natural gas price reporting issues.  This production excludes a
                                                having only to do with issues other than natural gas
price reporting.  We expressly reserve and do not waive any privilege and protection with respect to
any other document and any other subject matter.  Further, we expressly reserve and do not waive
any privilege and protection for these documents as to any other action, investigation, case, matter,
or party.  Finally, we understand that these          will be afforded Rule 6(e) protection under the
Federal Rules of Criminal Procedure, and to the extent possible you will assist Williams in
preserving the confidentiality of these        .

Please do not hesitate to contact me if you have any questions or concerns regarding this matter.

Very truly yours,

**Gray Cary Ware & Freidenrich LLP**

Edward P. Davis, Jr.
*edavis@graycary.com*

Enclosure

cc:     Jan Lawrence Handzlik, Esq.