UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.: 1:06-CR-00288-RJL |
| | ) | |
| SCOTT THOMPSON | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT SCOTT THOMPSON'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO COMPEL THE GOVERNMENT'S DISCLOSURE OF MATERIAL VOLUNTARILY <u>DISCLOSED TO IT BY THE WILLIAMS COMPANIES, INC.</u>**

The Government does not dispute that Williams waived any attorney-client privilege it might otherwise have claimed over information disclosed to the DOJ and CFTC between April 2003 and August 2005. *See* United States' Response to Defendant's Motions (filed May 15, 2007, Dkt. No. 16) ("Gov't. Resp.") at 4, 6-8. The only issue in dispute is whether Williams also has waived work-product protections that might otherwise cover this material. The Government concurs that the applicable standard is that set forth in *In re Subpoena Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984). *See* Gov't. Resp. at 9; Def. Motion and Statement of Points and Authorities (filed May 4, 2007, Dkt. No. 13) ("Def. Mot.") at 9. The Government's arguments fail to overcome Defendant's showing under the D.C. Circuit rule that Williams waived these protections, and accordingly Defendant's motion should be granted.[1]

---

[1] The Government fails even to meet the threshold burden imposed on the party resisting disclosure to show that the material in question is attorney work-product. *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005); *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) ("A blanket assertion of the privilege will not suffice. Rather, the proponent must conclusively prove each element of the privilege.") (internal quotations omitted). The Government also fails

(continued…)

I. **Williams Seeks to Selectively Use the Material in a Way that is Not Consistent with the Purpose of the Work-Product Protection**

It is simply inconsistent with the purpose of the protection for Williams to voluntarily disclose work-product to one adversary, the Government, and later to attempt to shield it from others. *See In re Subpoena Duces Tecum*, 738 F.2d at 1372; Def. Mot. at 9-10. Williams' actions undermined the very reasons for the work-product doctrine and cannot be reversed or ignored.

The Government advances the startling proposition that it had a "common interest" with Williams when the latter disclosed to it a settlement memorandum (and exhibits) and Power Point slides relating to resolution of the case, such that Williams and the Government were not adversaries. Gov't. Resp. at 12.[2] The Government cites no authority for this proposition and it is plainly contradicted by both common sense and the law of this circuit. *See, e.g., In re Subpoena Duces Tecum*, 738 F.2d at 1372 (noting that there was "no question" that the SEC, to whom company disclosed work-product in pursuit of leniency, was the latter's adversary).

---

(continued)

to meet its related obligation to "provide facts sufficient to support a judicial determination of the 'fact' or 'opinion' nature of the work-product." *In re PEPCO Employment Litig.*, Civ. A. No. 86-0603(RCL), 1992 WL 310781, at *4 (D.D.C. Oct. 2, 1992); *see also In re Sealed Case*, 676 F.2d 793, 812 n.72 (D.C. Cir. 1982) (noting that standard for finding implied waiver for work-product that reflects "purely factual matters . . . may not be as high as if the documents were protected by the attorney-client privilege as well"). The Court should grant Defendant access to the material on the basis of the Government's failure to address these standards alone. *See United States v. Stein, et al.*, No. 1:05-cr-00888, 2007 WL 1258926, at *12-13, 14 & nn. 66-70 (S.D.N.Y. May 1, 2007).

The Government also does not explain how it has standing to resist Defendant's motion on the basis of *Williams'* privileges.

[2] The Government does not suggest, nor could it, that Williams' disclosures to the DOJ of witness interview notes in April and July of 2003 in response to a grand jury subpoena were pursuant to a common interest.

2

Contrary to the Government's suggestion, Williams' disclosures of its attorney work-product were voluntary. *See* Gov't. Resp. at 10. Although at least some of Williams' disclosures were in response to a grand jury subpoena, there is no evidence that Williams moved to quash the subpoenas, which it had the right to do, and which it should have done if it sought to avoid blanket waiver. *See In re Grand* Jury, 475 F.3d 1299, 1304 (D.C. Cir 2007) (noting that the public's right to evidence via a grand jury subpoena is subject to the protections of constitutional, common-law and statutory privileges) (internal quotations omitted); *In re Grand Jury,* 676 F.2d 793, 807 (D.C. Cir. 1982) (documents sought by formal jury subpoena must be produced "unless protected by a recognized privilege"); *see also United States v. Philip Morris, Inc.*, 212 F.R.D. 421, 425-26 (D.D.C. 2002) (finding that company waived attorney client and work-product privileges when it produced material called for by congressional subpoena without challenging it or seeking a committee ruling that its privilege claims would be honored). Indeed, Williams announced publicly when it received the DOJ's subpoena in November 2002 that it would "cooperate with the U.S. Attorney's request, as it ha[d] with other government organizations inquiring into similar issues."[3] Moreover, the Government does not point to any evidence that Williams was compelled by subpoena or other process to disclose witness interview notes and other material to the CFTC or FERC, which it plainly did.

Lastly, the Government claims Williams earns no advantage by resisting production of this material to Defendant. Gov't. Resp. at 9. This argument ignores Williams' strong and continuing interest in: (1) currying favor with the Government in view of Williams' cooperation

---

[3] Kelly Swan & Richard George, *Williams Will Respond to Government Inquiry*, Williams Press Release (Nov. 8, 2002) *available at* http://www.williams.com/newsmedia/2002/20021108_339.htm.

3

obligations under the Deferred Prosecution Agreement; (2) keeping the documents not only from Defendant but also from present and future civil litigants; and (3) avoiding further potential adverse publicity concerning its discredited past business practices.

### II. <u>Williams Had No Reasonable Expectation that the Information it Produced to the Government Would Remain Confidential</u>

The Government construes this factor too narrowly, as a question simply of what "agreement" may have existed between the disclosing party and disclosed-to party. The relevant inquiry is actually whether the protection-holder "had [a] *reasonable basis for believing* that the disclosed materials would be kept confidential by" the recipient. *In re Subpoena Duces Tecum*, 738 F.2d at 1367 (emphasis added). The reasonableness qualification built into this factor is reflected in the D.C. Circuit's discussion, in *In re Subpoena Duces Tecum*, of whether the party to whom Tesoro produced in that case shared Tesoro's interests; if it had, Tesoro could perhaps have been more reasonably assured that that party would have no interest in disclosing the documents, and thus had a *reasonable* expectation that the disclosures would remain confidential. *See id.* at 1372.

It is important to view this factor more broadly than the government does because there are some promises the Government simply cannot keep, such as a promise that certain disclosures in a grand jury investigation will not later be considered to waive legal privileges and protections. The Government cites no case from this circuit finding that opposing parties can decide for themselves what does and does not constitute a waiver as against other parties. The law of *In re Subpoena Duces Tecum* makes it clear that a determination that there has been no

4

waiver can only be made by a court after a case-by-case evaluation of the circumstances of the disclosure.[4]

Williams' letters of transmittal to the DOJ show nothing more than Williams' unilateral assertions that the associated disclosures were not waivers as against other parties. *See* Gov't. Resp., Attachs. A, C, D (stating Williams "expressly reserve[s] and do[es] not waive any privilege and protection for these documents as to any other action . . ."). At best, the Government accepted these unilateral and ineffective statements. *See* Gov't. Resp. at 6 (claiming Government agreed to "these terms"). This agreement could not give Williams any reasonable expectation of confidentiality. *Contra Permian Corp. v. United States*, 665 F.2d 1214, 1216, 1218-19 (D.C. Cir. 1981) (agreeing with district court that Occidental had justifiable expectations of confidentiality where, after extensive factual analysis, district court found SEC had orally "agreed to limit confidential documents submitted by Occidental to *its own use*") (emphasis added).

This lack of reasonable expectation is all the more apparent because the disclosures Williams made pursuant to these letters were in response to a *grand jury subpoena*. Gov't. Resp., Attachs. A, C, D (emphasis added). Disclosures to the grand jury always and inherently have the potential for disclosure to the public should an indictment and prosecution follow. The letters indicate that the Government promised that "to the extent possible," it would "assist Williams in preserving the confidentiality of these [redacted]." *Id.*, Attachs. A, C, D. This is a

---

[4] The Government would have the Court reduce the "reasonable expectation" standard to a question of whether the government "agreed" to an attempted reservation of the right to claim a protection. This would only encourage parties to insert rote "non-waiver" claims into every disclosure of work-product, nullifying the three-part test in *In re Subpoena Duces Tecum. See The Navajo Nation v. Peabody Holding Co., Inc.*, 209 F. Supp. 2d. 269, 287 (D.D.C. 2002) ("[The reasonable expectation] factor must be considered in tandem with the others.").

far cry from a promise to ensure that any previously applicable work-product protection would remain intact.[5]  By contrast, the letters give no indication that the Government agreed that it would not disclose the material to any third party.  *See id.*, Attachs. A-D.

Indeed, the more exacting terms of Williams' disclosure to the CFTC of the very same documents, *after it had disclosed those documents to the DOJ,* highlight the absence of a parallel confidentiality agreement with the DOJ.  Williams' letter references CFTC's explicit "agreement" to return to Williams the disclosed material after its review, and its promise not to make or keep copies of the material.  Gov't. Resp., Attach. B.  Such a pledge much more strongly suggests that the CFTC would not disclose the documents to any other party.  There is no promise remotely similar to this in the DOJ letters.  *See id.*, Attachs. A, C, D.

In short, and contrary to the Government's suggestion (Gov't. Resp. at 9-10), the circumstances in this case are not distinguishable from those in *In re Subpoena Duces Tecum.  See* 738 F.2d at 1373-74 (noting no letter or anything else in the record indicating the seeking of or achievement of an agreement to "maintain *complete confidentiality*") (emphasis added).  Because even the Government's agreement to the terms of the transmittal letters could not have induced any reasonable expectation that witness interview notes Williams disclosed on April 25, July 14 and July 23, 2003 would be kept completely confidential, the Court should compel the

---

[5] The only "assistance" the Government could provide Williams in this regard is to provide Williams with notice in the event of a third party request to see the material, or (as evidenced by the Government's response to Defendant's motion to compel) to resist a motion to compel.  Neither of these is "an agreement to maintain complete confidentiality."  *See In re Subpoena Duces Tecum*, 738 F.2d at 1373 (noting SEC agreement to alert Tesoro to third party's request to see documents was "hardly an agreement to maintain complete confidentiality").

Government to produce them.⁶  Likewise and for the same reasons, the Court should compel the Government to produce to Defendant any of the other vaguely-described "attorney-generated material" Williams produced pursuant to "these same conditions."  *See* Gov't. Resp. at 7.

Moreover, the Government does not even address Williams' voluntary disclosure of interview notes (and other material) to FERC in June of 2002,⁷ well before the DOJ subpoenaed documents in November 2002.⁸  Under the *In re Subpoena Duces Tecum* standard, Williams' disclosure to FERC waived work-product protection over that material because the disclosure was voluntary, unconditional, and made to an adversary.  The disclosure also led to the *public disclosure* of the contents of Williams' internal investigation interviews.⁹  This fact not only reinforces the conclusion that Williams' disclosure to FERC was made without any confidentiality agreement in place, but also nullifies Williams' later attempts to resurrect its privileges by claiming selective waiver when it produced to the DOJ.

---

⁶ An additional reason for the Court to compel the production of the material produced in July 2003 is that it does not appear that the material was "opinion" work-product.  *See* Gov't. Resp., Attachs. C (stating that the disclosed material excluded "portions purely constituted attorney thoughts or [redacted]") & D (redacted to a greater extent but similar in most other material respects).  As noted above in note 1, "non-opinion" or "fact" attorney work-product is the most easily waived.

⁷ Paula Hall-Collins, et al., *Williams Volunteers to Provide FERC Gas Trading Data for Independent Review*, Williams Press Release (June 5, 2002) *available at* http://www.williams.com/newsmedia/2002/20020605_265.htm (referring to its "ongoing cooperation with FERC's investigation of electric and natural gas prices.").

⁸ Kelly Swan & Richard George, *supra* note 3; Gov't. Resp., Attachs. A-D.

⁹ Staff of the Fed'l Energy Reg. Comm'n, *Final Report on Price Manipulation in Western Markets: Fact Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices*, Docket No. PA02-2-000, at III 9-10 (Fed. Energy Reg. Comm'n Mar. 2003), *available at* http://www.ferc.gov/industries/electric/indus-act/wec.asp (describing, *inter alia*, the conclusions of Williams' internal investigation and, in detail, employees' statements about the conduct at issue here).

The Government does not exactly argue that Williams' disclosures of October 8, 2003 and August 12, 2005 were pursuant to a confidentiality agreement, but rather suggests that the fact that these disclosures were made in connection with settlement discussions weighs against waiver. Gov't. Resp. at 7-8. Any "understanding" between Williams and the Government that certain disclosures were made in pursuit of settlement had nothing to do with confidentiality. Likewise, the Federal Rules governing use of such disclosures do not call for or give rise to an expectation of confidentiality; rather they simply address whether such material is admissible *against the settling parties*. See Fed. R. Crim. P. 11(f); Fed. R. Evid. 410. The rules thus may limit use of the disclosed material against Williams, but they have nothing to do with use of the material by Scott Thompson.

Finally, the Deferred Prosecution Agreement ("DPA") manifests Williams' intention and the nature of its cooperation obligations. In that agreement, Williams affirmed its "*continuing commitment to full cooperation*" with the Government and promised to cooperate in the prosecution of others and, among other things, to not raise work-product claims as to any documents or information requested by the Government related to the internal factual investigation. See DPA (Def. Mot., Ex. A) at ¶¶ 2, 5, 6(c) (emphasis added).[10]

---

[10] The Government's reliance on *In re Natural Gas Commodity Litig.*, No. 03 Civ. 6186VMAJP, 2005 WL 1457666 (S.D.N.Y. June 21 2005), *aff'd* 232 F.R.D. 208, 210 (S.D.N.Y. 2005), is misplaced. First, that district court relied upon Second Circuit law, which does not bind this Court. Moreover, with all due respect to the Southern District court, it overstated the extent to which AEP's agreement with DOJ reflected an explicit confidentiality agreement. The DOJ simply "agreed-to" AEP's unilateral "non-waiver" agreement. *Id.* at *3 (discussing February 2003 letter). As discussed above, not all agreements can be said to create a "reasonable expectation" of confidentiality, the standard applied in this circuit. As for Aquila's agreement with the FBI, it is distinguishable from those at issue here: the FBI agreed to "abide by" the terms of production to the CFTC, which explicitly promised to "maintain confidentiality." *Id.* at *4 (discussing September 2003 letter). Moreover, neither of these agreements related to

(continued…)

Even if the Court were persuaded, despite all of the above, that the agreements described by the Government are dispositive or could weigh against finding waiver, the Government has not satisfied its burden to show such agreements existed. To satisfy its burden, the Government must be required to make a greater showing regarding its agreement to the claims of non-waiver and other terms of the letters than simply claiming that unspecified Government attorneys agreed to certain terms "in conversations" or orally agreed to the unspecified "same conditions." *See* Gov't. Resp. at 6, 7. The Government should be required to do more than make the conclusory claim of such agreement in the face of a Defendant's substantial need for, and his right to, this material. *Cf. Permian,* 665 F.2d at 1218 (discussing at length the factual support for the district court's finding that there was a confidentiality agreement, including various counsels' affidavits, counter-affidavits and reply-affidavits relating to the terms of the claimed oral agreement).[11]

### III. Defendant's Receipt of Materials Williams Voluntarily Disclosed to the Government Would Not Trench on Any Policy Elements Inherent in this Protection

Addressing this factor, the Government half-heartedly argues that Williams should not be "punished" for cooperating with the Government, and that companies like it should not be deterred from cooperating with Government investigations. Gov't. Resp. at 10. The latter

---

(continued)

documents that were to be produced to a grand jury. Finally, although it is true that AEP and the government entered an agreement similar in many respects to the DPA at issue here, the court in *In re Natural Gas Commodity Litig.* did not address its impact on the waiver analysis.

[11] At a hearing on the issue, Defendant would call or seek to cross-examine at least: Keslie Stewart and any other DOJ attorney whom the government claims came to an oral agreement with Williams; counsel for Williams at the time of those disclosures (including at least Edward P. Davis, Jr. and Walter F. Brown, Jr.); and counsel for the individual defendants, who pled guilty separately and whose prior interview memoranda are among the disputed materials (Stephen A. Mansfield, John M. Potter and Jan Lawrence Handzlik). *See* Gov't. Resp., Attachs. A-D.

argument has been flatly rejected in this circuit in the context of disclosures pursuant to the SEC's voluntary disclosure program in the hope of better treatment because the SEC is a "potential opponent." *See, e.g., In re Subpoenas Duces Tecum*, 738 F.2d at 1375. The Government offers no basis upon which to distinguish disclosures to the DOJ made with the same hope, and there is none. As for the former argument, Williams will not be "punished" by virtue of Defendant's access to this information. Indeed, Williams, for all intents and purposes, is immune from prosecution by virtue of the DPA, and has nothing to fear from Thompson.[12]

Moreover, neither of these points addresses the "policy factors now inherent in this privilege." *In re Subpoena Duces Tecum,* 738 F.2d at 1375. That interest, promoting attorneys' ability to prepare to represent clients against adversaries, must be balanced "against society's general interest in revealing all true and material facts relevant to the resolution of a dispute." *Id.* at 1371. That latter interest is great in this case because society shares Scott Thompson's interest in a fair trial, which he will be denied if not granted access to material and exculpatory evidence in the Government's possession.

The Government takes an overly narrow view of Defendant's need for and right to the material he has asked the Government to produce. First, it states that there is nothing "exculpatory" in the documents and that some of the evidence may be inadmissible. Gov't. Resp. at 13-14. But the Government is obligated under *Brady v. Maryland* to produce not only "exculpatory" evidence but also evidence that is "material either to guilt or punishment," 373 U.S. 83, 87 (1963), including impeachment evidence, *Giglio v. United Sates*, 405 U.S. 150, 154

---

[12] With regard to at least the October 8, 2003 and August 12, 2005 presentations Williams made to the government, these materials cannot be used against Williams in civil litigation. *See* Fed. R. Crim. P. 11(f); Fed. R. Evid. 410.

(1972).  The Government has no right to limit its production to what it deems "admissible;" its disclosure obligations are governed by relevance and materiality standards alone.  *See* Fed. R. Crim. P. 16.  Second, the Government suggests that Defendant may obtain the information it seeks elsewhere.  It promises to produce the data underlying Williams' analyses produced to the Government (Gov't. Resp. at 13), but Defendant has no way of obtaining the substance of witness interviews produced to the Government or Williams' agents' analyses of the facts underlying the investigation, all of which will be critical to his ability to effectively examine or cross-examine witnesses at trial.  These considerations outweigh Williams' selectively invoked interest in protecting the confidentiality of its attorneys' work-product.  Because an "objective consideration of fairness negates the assertion of the privilege" in this case, the Defendant's motion should be granted.  *See In re Subpoena Duces Tecum*, 738 F.2d at 1371 (internal quotations and citations omitted).

**IV.    Conclusion**

For the reasons set forth in Defendant's motion and statement of points and authorities, and the foregoing reply, Defendant's motion should be granted, and Defendant should gain access to all information Williams yielded to the Government in its pre- and post-DPA communications about this matter.

                                    Respectfully submitted,

                                    /s/ Philip T. Inglima
                                  Philip T. Inglima (D.C. Bar No. 420119)
                                  Adrian D. Mebane (D.C. Bar No. 467885)
                                  Ann M. Mason (D.C. Bar No. 491902)
                                  CROWELL & MORING LLP
                                  1001 Pennsylvania Avenue, NW
                                  Washington, DC  20004
                                  Telephone:  (202) 624-2500
                                  Facsimile:  (202) 628-5116

Dated:  May 22, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May 2007, a true copy of the foregoing Defendant Scott Thompson's Reply Brief in Support of His Motion to Compel the Government's Disclosure of Material Voluntarily Disclosed to It by The Williams Companies, Inc. was sent via electronic mail, to:

> Robertson Park, Assistant Chief
> Amanda L. Riedel, Trial Attorney
> U.S. Department of Justice
> Criminal Division, Fraud Section
> 10th & Constitution Ave., NW
> Bond Building, 4th Floor
> Washington, DC 20530

    /s/ Adrian D. Mebane
    Adrian D. Mebane