## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No.: 1:06-CR-00288-RJL** |
| | ) | **Misc. Docket No.: 1:07-MC-00241-RJL** |
| **SCOTT THOMPSON** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**DEFENDANT SCOTT THOMPSON'S OPPOSITION
TO THE WILLIAMS COMPANIES, INC.'S
EMERGENCY MOTION TO STAY
THE COURT'S JUNE 10 AND JUNE 24 DISCOVERY ORDERS**

Philip T. Inglima (D.C. Bar No. 420119)
Ann M. Mason (D.C. Bar No. 491902)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Dated: July 1, 2008

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 1

     A.     Williams Has No Right to Appeal the Order....................................................... 1

     B.     Williams Fails To Meet Its Burden to Justify a Stay........................................ 7

          1.     Williams cannot show a strong likelihood of success on the merits.................................................................................................. 7

          2.     Williams will not be irreparably harmed absent a stay...................... 9

          3.     Scott Thompson would be substantially harmed by a stay. ............... 11

          4.     The public interest would be harmed by a stay. ............................... 13

III.    CONCLUSION ................................................................................................. 14

## TABLE OF AUTHORITIES

### Cases

*Al-Anazi v. Bush,* 370 F. Supp. 2d 188 (D. D.C. 2005)................................................................ 9

*Application of Washington Post Co.*, 576 F. Supp. 76 (D.D.C. 1983)........................................ 4

*Carroll v. United States*, 354 U.S. 394 (1957)........................................................................ 2, 5

*Clifford v. United States*, 136 F.3d 144 (D.C. Cir. 1998) ........................................................ 4

*Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972 (D.C. Cir. 1985)....... 7, 9, 11

*Davenport v. Int'l Bhd. of Teamsters, AFL-CIO,* 166 F.3d 356 (D.C. Cir. 1999)........................ 9

*In re Application of Nat'l Broad. Co.*, 653 F.2d 609 (D.C. Cir. 1981) ..................................... 2, 3

*In re Subpoenas Duces Tecum*, 738 F.2d 1367 (D.C. Cir. 1984)............................................. 13

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,*
   230 F. Supp. 2d 12 (D.D.C. 2002) ................................................................7, 10, 12

*Nat'l Ass'n of Mfrs. v. Taylor,* Civ. A. No. 08-208 (CKK),
   2008 WL 1776997 (D.D.C. Apr. 18, 2008) ........................................................... 7, 8

*Twelve John Does v. District of Columbia*, Civ. A. No. 80-2136,
   1988 WL 90106 (D.D.C. Aug. 4, 1988) ...................................................................... 7

*United States v. Dean*, 989 F.2d 1205 (D.C. Cir. 1993) ........................................................ 6

*United States v. E-Gold Ltd.,* Crim. A. No. 07-109 (RMC),
   2007 WL 2103602 (D.D.C. 2007)................................................................... 13, 14

*United States v. Greely*, 413 F.2d 1103 (D.C. Cir. 1969)....................................................... 5

*United States v. Koenig*, 290 F.2d 166 (5th Cir. 1961) .......................................................... 2

*United States v. MacDonald*,  456 U.S. 1 (1982).................................................................. 12

*United States v. Marion*, 404 U.S. 307 (1971)..................................................................... 12

*United States v. McVeigh*, 106 F.3d 325 (10th Cir. 1997)....................................................... 6

*United States v. Philip Morris, Inc.*, 314 F.3d 612 (D.C. 2003)............................................. 11

*United States v. Suarez*, 880 F.2d 626 (2d Cir. 1989) ......................................................... 2, 3

*United States v. Toussie*, 397 U.S. 112 (1970) .................................................................... 12

*United States v. Watson*, 386 F.3d 304 (1st Cir. 2004) ....................................................... 5, 6

*United States v. Wittig*, No. 03-40142, 2005 WL 1385666 (D. Kan. June 7, 2005).................... 13

*Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,*
   259 F.2d 921 (D.C. Cir. 1958) ............................................................................ 7, 9

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)................................................... 9

### Statutes

18 U.S.C. § 3731 ................................................................................................................. 5

28 U.S.C. § 1291 ............................................................................................................. 1, 2

### Other Authorities

U.S. Const. amend. VI. ...................................................................................................... 12

Defendant Scott Thompson, through counsel, respectfully submits this brief in opposition
to The Williams Companies, Inc.'s Emergency Motion to Stay the Court's June 10 and June 24
Discovery Orders in *United States v. Scott Thompson* (Misc. Docket 1:07-mc-00241-RJL, entry
No. 5) (hereinafter "Williams' Motion").

## I.    INTRODUCTION

On June 9, 2008, the Court issued an order granting Defendant Scott Thompson's Motion
to Compel the Government's Disclosure of Material Voluntarily Disclosed to It by The Williams
Companies, Inc. (Crim. Docket 1:06-cr-00288-RJL, entry No. 24; Misc. Docket 1:07-mc-00241-
RJL, entry No. 4) (the "Order").  Although the government had opposed defendant's motion to
compel, the government has stated plainly in open court on June 26 that it has no desire to
challenge or appeal the Order.  In fact, the government has no legal right or means to appeal such
an order.  The Williams Companies, Inc. ("Williams"), is not a party to the defendant's criminal
case, yet it essentially intervened in that proceeding to oppose the motion to compel.  Williams
now asks the Court to stay its own ruling and permit Williams to pursue an appeal to which it has
no right in order to block the government's court-ordered and largely completed production of
documents that are no longer in Williams' possession or control.  The Court should deny this
effort to relitigate the motion and should allow this case to proceed, in accordance with Mr.
Thompson's constitutional rights to a fair and speedy trial.

## II.    ARGUMENT

### A.    Williams Has No Right to Appeal the Order

Williams' stay request should be denied as moot because Williams has no jurisdictional
basis for gaining appellate review of the Order.  Williams wrongly asserts that 28 U.S.C. § 1291
authorizes it to appeal the Court's Order.  As Williams concedes, section 1291 permits appeals

only from final judgments.  (The Williams Companies, Inc.'s Memorandum in Support of Its

Emergency Motion to Stay the Court's June 10 and June 24 Discovery Orders in *United States v.*

*Scott Thompson* (Misc. Docket 1:07-mc-00241-RJL, entry No. 6) (hereinafter "Williams'

Mem.") at 2.)  This discovery order is not a final judgment as to Scott Thompson or the

government, yet Williams argues that the Order is a final judgment as to Williams' application

for relief.  Williams fails to satisfy the narrow criteria in which certain third-party actions have

secured appellate review.

A discovery order in a criminal case will not be appealable under 28 U.S.C. § 1291

unless it is sufficiently independent from the main course of the prosecution to warrant treatment

as a plenary order.  *Carroll v. United States*, 354 U.S. 394, 403 (1957).  "Orders in an incidental

ancillary proceeding to a criminal action are interlocutory and non-appealable; orders in

independent plenary proceedings are final and appealable."  *United States v. Koenig*, 290 F.2d

166, 169 (5th Cir. 1961).  "The instances [of appealable orders] in criminal cases are very few,"

*Carroll*, 354 U.S. at 403, and this Order is not among them.

Williams supports its theory by citing inapposite cases brought by news organizations

asserting claims that were separable and independent from the criminal cases out of which they

arose.  For example, *In re Application of Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981),

involved broadcasters' attempts to gain access to sealed materials.  An order denying relief in

that case was appealable because it involved an order adjudicating a dispute that was essentially

between the non-party news media applicant and the Court.  *United States v. Suarez*, 880 F.2d

626, 628-29 (2d Cir. 1989) ("an order is appealable when it adjudicates what is essentially a

dispute between a news agency as applicant and the clerk of the district court as custodian of the

documents to which the news agency seeks access.").  In this context, *In re Nat'l Broad. Co.*

stands only for the proposition that denial of the public's right of access to judicial records "remains subject to appellate review." 653 F.2d at 613. The case does not advance Williams' novel and alarming notion that a non-party intervenor could gain jurisdiction to litigate appeals in criminal cases where the prosecution could not. Indeed, *In re Nat'l Broad. Co.* actually undercuts Williams' argument by demonstrating that courts in this circuit will look to the underlying issue in deciding whether jurisdiction for an appeal exists.

An order in a miscellaneous proceeding is appealable only when "the dispute could have been treated by the district court as a new civil case." *Suarez*, 880 F.2d at 629. The fact that the Clerk has filed a copy of the Order in Williams' miscellaneous proceeding does not mean that the Order is subject to appeal outside of the criminal case. The public's right to access is not at issue here. If the criminal case were dismissed tomorrow, the basis for Williams' application would disappear. In contrast, *In re Nat'l Broad. Co.* involved the broadcasters' post-trial application to inspect and copy video and audio tapes that had been introduced into evidence and played to the jury in a criminal trial. 653 F.2d at 620. At that point, the broadcasters were asserting an interest independent of the criminal trial. Here, Williams' application seeks in relevant part to prevent the Court from entering an order directed to the government concerning materials fully within the custody and control of the government, which are discoverable by the defendant being prosecuted by the government.[1] Williams' application cannot be divorced from Scott Thompson's criminal case. Accordingly, Williams cannot appeal this Order.

---

[1] Williams' Motion plainly seeks to prevent execution of the Court's Order directing the government to act in the criminal case. The Order itself is silent with respect to any issues beyond the government's proper conduct in producing discovery to Mr. Thompson. Yet, in a Notice of Appeal Williams filed yesterday in the Miscellaneous matter, Williams asserts that it is appealing "the judgment of this Court . . . denying Williams' Application for Relief Pursuant to

(continued…)

3

Williams erroneously asserts that the facts in *Clifford v. United States*, 136 F.3d 144

(D.C. Cir. 1998), are substantially similar to the facts here.  In *Clifford*, non-parties to a criminal

case sought disclosure of sealed documents from the criminal trial, arguing that those materials

were important to ongoing civil litigation to which they were parties.  *Id.* at 145.  The *Clifford*

appellants asserted their own right of discovery in order to fairly litigate a simultaneous civil

proceeding before the same judge.  *Id.*  Williams presents no such interest here.  Moreover,

similar to *In re Nat'l Broad. Co.*, the appellants in *Clifford* sought to *gain* access to sealed

materials, not to block a criminal defendant from receiving the discovery ordered in his favor.

Whatever interests Williams might possess here must yield to those of Scott Thompson.

Even a case Williams cites makes this point:  "Most importantly, access to the proceedings is

limited by defendant's constitutional right to a fair trial and the government's need to obtain just

convictions."  *Application of Washington Post Co.*, 576 F. Supp. 76, 79 (D.D.C. 1983).  Here,

Scott Thompson's right to a fair trial must dominate the Court's focus, not Williams' desire to

relitigate a settled, ancillary issue.  Additionally, the government and the public have an interest

in ensuring a speedy and just prosecution.  Defendant has a right to be prosecuted in accordance

with the rules of procedure and his substantial rights, and not subject to the whims and

intervention of third-party witnesses.

---

(continued)

LCrR 57.6 in *United States v. Scott Thompson* (1:06-cr-00288-RJL-1)."  (Misc. Docket No. 1:07-mc-00241-RJL, entry No. 8.)  In reality, Williams sought as an intervenor to defeat Mr. Thompson's Motion to Compel.  *See* The Williams Companies, Inc.'s Application for Relief Pursuant to LCrR 57.6 in *United States v. Scott Thompson* (1:06-cr-00288-RJL-1) (Misc. Docket 1:07-mc-00241-RJL, entry No. 2) at 3, 36.  The court entered no "judgment in the criminal or miscellaneous matters;" rather, it entered an order granting a motion which neither the government nor Williams has a right to appeal.

Williams readily admits that it cannot appeal any decision in Scott Thompson's criminal case. (Williams Mem. at 2 ("Williams is not a party to the defendant's criminal proceeding and cannot appeal from any order or judgment entered in that proceeding.").) Yet, Williams is attempting to use a non-party application for relief filed under LCrR 57.6 to collaterally achieve exactly what it admits it cannot do: appeal a discovery order in Scott Thompson's criminal case.

Because Williams' application for relief is inseparable from the criminal case, the right to take an appeal from the Court's Order cannot be permitted if it exceeds the limitations of the Criminal Appeals Act, 18 U.S.C. § 3731. Appeals against criminal defendants are strongly disfavored. *Carroll v. United States*, 354 U.S. 394, 400 (1957); *United States v. Greely*, 413 F.2d 1103, 1104-05 (D.C. Cir. 1969). Jurisdiction for courts of appeals to hear interlocutory appeals against criminal defendants is carefully circumscribed. *United States v. Watson*, 386 F.3d 304, 311 (1st Cir. 2004). "The Government's ability to appeal in a criminal case is a matter of legislative grace, and, thus, requires express statutory authorization." *Id.* at 307. Section 3731 conveys limited appellate rights only to the government, and does not anticipate that a non-party can interject itself into a criminal case and subject the defendant to appellate litigation in excess of the government's rights.

Section 3731 governs the right to appeal a decision favoring a criminal defendant. That section permits appeals only from orders (1) "dismissing an indictment or information or granting a new trial after verdict or judgment," (2) "suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding," or (3) "granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release." 18 U.S.C. § 3731. Thus, pre-trial discovery orders cannot be appealed unless they suppress or exclude evidence. *United*

*States v. Dean*, 989 F.2d 1205, 1210-11 (D.C. Cir. 1993). "If an order falls outside those categories, the government's attempted appeal must be dismissed." *Watson*, 386 F.3d at 310. "That the order may thus become effectively unreviewable does not change the decisional calculus." *Id.* Here, because the Order does not suppress or exclude evidence or fall within any of the other limited categories of section 3731, the government cannot appeal this Order.

To allow Williams' to assert an appeal of this discovery Order in Scott Thompson's case where the government could not and would not do so would offend Mr. Thompson's right to a fair trial and frustrate the policies of section 3731. "Section 3731 was 'carefully circumscribed by Congress out of a desire (among other reasons) to safeguard individuals from the special hazards inherent in prolonged litigation with the sovereign.'" *Watson*, 386 F.3d at 310 (quoting *United States v. McVeigh*, 106 F.3d 325, 330 (10th Cir. 1997)). Scott Thompson was indicted nearly two years ago, for conduct that allegedly occurred more than eight years ago. Whatever interest Williams may have in the materials it furnished the government, that interest must yield to Scott Thompson's rights and interests in this criminal case.

If any non-party could intervene in a criminal case and then subject the defendant to multiple appeals, criminal cases could linger indefinitely. Moreover, individual defendants might be forced to battle any and every witness that had produced documents for the investigation which were discoverable and in the prosecutor's possession. Local Criminal Rule 57.6 provides a means for non-parties to seek to be heard in criminal cases – nothing more. Williams has been heard. That Williams did not obtain the relief it sought in its LCrR 57.6 application does not create jurisdiction for Williams to subject Scott Thompson to an appeal that the government could not bring. The Court should deny Williams the stay it requests because the appeal Williams seeks is legally impermissible.

**B.      Williams Fails To Meet Its Burden to Justify a Stay**

Williams' request for a stay must be denied because Williams cannot satisfy the stringent

standard for such relief in this circuit.  "An indefinite stay pending appeal is an extraordinary

remedy, and is to be granted only after careful deliberation has persuaded the Court of the

necessity of the relief."  *Twelve John Does v. District of Columbia*, Civ. A. No. 80-2136, 1988

WL 90106, at *1 (D.D.C. Aug. 4, 1988)  (citing *Virginia Petroleum Jobbers Ass'n v. Federal*

*Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).  As Williams acknowledges, in order to

determine whether a stay is necessary, this Court must examine "(1) the likelihood that the party

seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party

will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court

grants the stay; and (4) the public interest in granting the stay."  *Nat'l Ass'n of Mfrs. v. Taylor,*

Civ. A. No. 08-208 (CKK), 2008 WL 1776997, *1 (D.D.C. Apr. 18, 2008).  Williams has the

"obligation" to satisfy these "stringent" standards.  *Id*. at *2 (quoting *Cuomo v. United States*

*Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985) (movant has "obligation to

justify the court's exercise of such an extraordinary remedy") and *Judicial Watch, Inc. v. Nat'l*

*Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 14 (D.D.C. 2002) (movant "must satisfy

stringent standards required for a stay pending appeal") (internal quotations omitted)).  Williams

fails each of these measures.

**1.      Williams cannot show a strong likelihood of success on the merits.**

As Mr. Thompson argued in extensive briefing before this Court on the underlying

dispute, Williams' theory – that it was coerced into producing privileged material – has no

support in this circuit; in fact, the weight of authority disfavors Williams.  (*See generally*

Defendant's Response to The Williams Companies, Inc.'s Application for Relief Pursuant to

LCrR 57.6 in *United States v. Thompson* (Misc. Docket 1:07-mc-00241-RJL, entry No. 3) (hereinafter "Def. Resp. to Williams").) Williams' theory is at odds with its own public statements at the time of its disclosures, which reflected eager cooperation with the government. (*See* Defendant's Statement of Points and Authorities in Support of Motion to Compel the Government's Disclosure of Material Voluntarily Disclosed to It by The Williams Companies, Inc. (Crim. Docket 1:06-cr-00288-RJL, entry No. 13) at 3-5.) Its theory ignores the benefits it obtained from its waivers, and ignores the common sense fact that the government sought Williams' privileged material specifically to build cases which might bring individuals like Mr. Thompson *to trial*, just as the government is attempting to do in the instant action. Williams' never could have expected this material to remain confidential. *See id.* at 8-13; Def. Resp. to Williams at 12-15.

Williams "offers no points of law that undermine the Court's holdings or demonstrate any likelihood that [it] will prevail on its appeal," but rather rehashes its prior arguments. *Taylor*, 2008 WL 1776997, *4. "Mere repetition of [Williams'] arguments," however, "does not demonstrate that [it] is any more likely to succeed on the merits of its claims than it was when the Court issued its [order]." *Id.* at *5. With the exception of noting that another court has made a different finding concerning waiver, Williams does not even cite anything that could undermine the Court's Order. Moreover, Williams already had noted the other court's holding to this Court in its Memorandum in Support of its Application for Relief – and this Court properly rejected it. All that citation of that order suggests is that Williams might succeed by appealing the instant case to a particular judge of the Superior Court of California.

Williams' failure to establish likelihood of success on the merits is "particularly important" because when a movant cannot establish this factor, "it [must make] a very strong

showing with respect to the other preliminary injunction factors to turn the tide in [movant's] favor." *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO,* 166 F.3d 356, 366-67 (D.C. Cir. 1999) (discussing standards for preliminary injunction); *Al-Anazi v. Bush,* 370 F. Supp. 2d 188, 193 n.5 (D.D.C. 2005) (citing *Davenport* and noting that the test for a stay is essentially the same as that for injunctions "although courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay") (internal citations omitted). Williams has not done so, and cannot.

Because Williams has not established "a substantial indication of probable success, there [is] no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925.

### 2. Williams will not be irreparably harmed absent a stay.

Williams cannot meet its burden to show, as it must, that the injury it claims it will suffer in the absence of a stay is "both certain and great." *Cuomo*, 772 F.2d at 976 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Williams claims that the government's disclosure to Scott Thompson of the material Thompson seeks "could prejudice Williams in [the California] litigation," or "compromise [Williams'] rights" in that case (Williams' Mem. at 5, 6), but Williams does not even begin to explain why that would be true. These "bare allegations of what is likely to occur" are of no weight "since the court must decide whether the harm will *in fact* occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* (quoting *Wisconsin Gas Co.*, 758 F.2d at 674); *Cuomo*, 772 F.2d at 976 (noting that movants only "vaguely sketch[ed] the contours of the asserted harm").

First of all, Williams' claims of harm from disclosure of its "privileged" material stem from the faulty premise that the material is privileged. Williams waived any privilege that once

9

attached to the material when it voluntarily produced the material to the government.  Williams

should not be permitted now to bootstrap its argument on the merits into the analysis of the stay

factors.  *See Judicial Watch*, 230 F. Supp. 2d at 15 (dismissing Executive Branch officials'

claims of harm that relied on "premise that compliance with this court's discovery orders

imposes an unconstitutional burden" even though, if the premise were accepted, court agreed

officials' interests would be harmed).

In fact, what happens in this Court may not impact in any way Williams' attempts to

prevent the California civil plaintiffs from having access to the material in question.  The

question Williams will face in each and every court in which any party seeks access to the

material in question is whether Williams waived its privileges and protections by its initial

disclosures to the government.  Nothing this Court (or the Court of Appeals) decides will alter

the facts of those disclosures or determine Williams' ability to argue in any court outside of this

District that its disclosures to the government were involuntary or coercive and thus did not

constitute a full waiver.  Indeed, having made every effort to prevent it, Williams may argue that

the production by the government which this Court has ordered in this case is not tantamount to a

voluntary disclosure by Williams.  On the other hand, there is nothing this Court or the D.C.

Circuit can do to alter what might happen in the appeal of the Superior Court of California case,

or how any other court might rule.  The protection from "harm" Williams seeks is thus not only

unnecessary but also likely to be ineffective.  *See Taylor*, 2008 WL1776997, at *5 (noting that

court must consider whether stay will alter the status quo).

Moreover, any harm to Williams that might result from further disclosure of its

documents and information is self-inflicted.  When Williams disclosed this information to the

government, it took a calculated risk that third parties like Scott Thompson would successfully

gain access to the information by arguing waiver. The "self-imposed costs" Williams now claims it stands to incur "are not properly the subject of inquiry on a motion to stay." *Cuomo*, 772 F.2d at 977.

Williams cites *United States v. Philip Morris, Inc.*, 314 F.3d 612 (D.C. Cir. 2003) in support of its argument that the harm from disclosure of privileged documents is "clear enough" (Williams' Mem. at 5), but that case is inapposite. First, the movant in that case sought appeal of an order in a trial between itself and the United States where the United States planned to use a document the movant claimed was privileged against the movant in that litigation. *Philip Morris*, 314 F.3d at 615-16. Thus, as Williams itself noted, what the court stated in *Philip Morris* was that "the harm resulting from the disclosure of the privileged documents *to an adverse party* is clear enough." *Id.* at 622 (emphasis added), *cited in* Williams' Mem. at 5. But that is not what is at stake here. Here, Williams is not a party in the litigation in question and neither the government nor Scott Thompson is attempting to use the material against Williams.

Second, in *Philip Morris,* the proponent of the stay did not have a prior opportunity to fully litigate its claims of privilege. *See id.* at 616. Here, Williams has had an exhaustive opportunity to brief its arguments, with great resulting delay to the criminal case. Finally, all that was at stake in *Philip Morris* was the pace of civil discovery. At stake here, in stark contrast, is the interest in speedy justice in a criminal case, an interest of constitutional magnitude to Scott Thompson, which is shared by the government and the public, and far outweighs those under review in *Philip Morris*.

### 3.    Scott Thompson would be substantially harmed by a stay.

Williams' spurious assertion that there is nothing "relevant" in the material in question is belied by its concern that Scott Thompson might use that material at trial. Its argument that Scott Thompson will not be harmed by a stay as long as he has *some* documents to review ignores the

11

obvious harm it would cause him through both denial of relevant information and delay of his trial. (*See* Williams' Mem. at 6.) Scott Thompson left Williams in 2001. He was not contacted by the FBI until early 2003 and not indicted until September 2006. The Sixth Amendment "right to a speedy and public trial" establishes a presumption that Scott Thompson, like any criminal defendant, would be harmed by the delay caused by a stay not of his own seeking. *See* U.S. Const. amend. VI. *United States v. MacDonald*, 456 U.S. 1, 8 (1982) ("The speedy trial guarantee is designed to . . . shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."). Further delay will continue to "disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy . . . [and prolong] anxiety in him, his family and his friends." *United States v. Marion*, 404 U.S. 307, 320 (1971), *cited in McDonald*, 456 U.S. 1 at 8.

Not only will a stay prolong the disruption of Scott Thompson's life, it will further weaken his ability to present a defense. *See United States v. Toussie*, 397 U.S. 112, 114-15 (1970) (recognizing, in discussion of purpose of statute of limitations, the danger for individuals in "having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past."). Scott Thompson seeks to use the materials held by the government to test the recollections and truthfulness of the government's witnesses, which will be harder to do as time passes. *Judicial Watch*, 230 F. Supp. 2d at 16 (noting in analysis of whether to stay order granting discovery that the "value of the information" sought "declines substantially as time proceeds"). Indeed, the government's interests in "the availability of its witnesses," the memories of its witnesses, and "the expeditious use of resources" would also be harmed by a stay. *See United States v. E-Gold Ltd.*, Crim. A. No. 07-109 (RMC), 2007 WL 2103602, *4

(D.D.C. July 20, 2007). ("[T]he Government's expression of harm to its interests counsels against a stay.") (citing *United States v. Wittig*, No. 03-40142, 2005 WL 1385666 (D. Kan. June 7, 2005)).

### 4. The public interest would be harmed by a stay.

The public has an interest in disclosure of all material facts, especially in a criminal case. Williams cites the public's interest in preserving viable privileges (Williams' Mem. at 6) but ignores the balance courts must strike between this interest and "society's general interest in revealing all true and material facts relevant to the resolution of a dispute." *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1371 (D.C. Cir. 1984). Although "[a] disclosure made in pursuit of . . . trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege," disclosure to an opponent, in pursuit of leniency from that opponent, should not. *Id.* at 1371 (internal citation omitted). By seeking to prevent Thompson's access to material Williams previously produced to the government, Williams is attempting to keep the documents out of the hands of some adversaries – adversaries who are not even part of this case – even though it has provided those documents, for its own benefit, to its government adversary. As such, Williams is seeking greater advantage from its control over work product "than the law must provide to maintain a healthy adversary system." *See id.* at 1372.

Finally, the interests at stake in this case are starkly different from those in any of the cases Williams cited because of the special nature of criminal cases. In cases like Scott Thompson's:

> [t]he public has a strong interest in seeing justice rendered
> expeditiously. If Defendants are not guilty, the sooner that verdict
> is obtained, the sooner they will be able to turn their attentions

back to business.  If Defendants are guilty as charged . . . the better off the public will be.  This factor counsels against a stay.

*E-Gold Ltd.*, 2007 WL 2103602, at *5.  Indeed, in *E-Gold*, the court even denied the criminal defendant himself a stay in light of this factor and the government's interests in advancing to trial.  *Id.* at *5.  The case against granting a stay is even stronger in this case, where the defendant opposes it.

Williams has not established it is likely to succeed on the merits on appeal.  It has not established it will be harmed.  In light of its failure to establish these two factors, and the harm to the defendant, the government, and the public which a stay would cause, this Court should deny Williams' motion.

## III.    CONCLUSION

For the foregoing reasons, Williams' motion to stay the Court's Order should be denied.


Respectfully submitted,


_/s/ Philip T. Inglima_____
Philip T. Inglima (D.C. Bar No. 420119)
Ann M. Mason (D.C. Bar No. 491902)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116


Dated:  July 1, 2008

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st of July 2008, a true copy of the foregoing Defendant Scott

Thompson's Response to The Williams Companies, Inc.'s Emergency Motion to Stay the

Court's June 10 and June 24 Discovery Orders was sent via electronic mail to:

> F. Joseph Warin, Esquire
> Peter E. Jaffe, Esquire
> Andrew S. Boutros, Esquire
> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, NW
> Washington, DC  20036
>
>
> Robertson Park, Assistant Chief
> Nicola Mrazek, Trial Attorney
> U.S. Department of Justice
> Criminal Division, Fraud Section
> 10th & Constitution Ave., NW
> Bond Building, 4th Floor
> Washington, DC  20530

                                              /s/ Ann Mason
                                         Ann M. Mason